## PASTRAS v. OBERLIN.

1. BROKERS—LISTING AGREEMENT—NATURE OF CONTRACT.
   A real-estate broker's listing agreement is not such a bilateral contract established by the mutual promises contained therein as to entitle the broker to a commission irrespective of the good-faith termination of the agreement by the owner before the broker produces a purchaser ready, willing and able to purchase on the agreed terms.

2. SAME—DISCHARGE—COMMISSIONS.
   The right of a real-estate broker to a commission is fixed at the time of his discharge in good faith and depends on whether or not he has done the thing he undertook to do before his authority was terminated.

REFERENCES FOR POINTS IN HEADNOTES
[1] 8 Am Jur, Brokers §§ 39–43.
[2] 8 Am Jur, Brokers §§ 139, 168.
[3] 8 Am Jur, Brokers §§ 168, 169, 170.

3. SAME—COMMISSIONS—TERMINATION OF LISTING AGREEMENT.

    Owners of property who, in good faith, withdrew it from sale
    under listing agreement before the broker furnished a buyer
    ready, willing and able to purchase on the owner's terms were
    not liable to the broker for commissions, where, after the ter-
    mination of the agreement, he did furnish such a buyer
    during period for which the agreement had covered.

Appeal from Ingham; Coash (Louis E.), J. Sub-
mitted October 8, 1957. (Docket No. 13, Calendar
No. 47,428.) Decided November 26, 1957. Rehearing
denied December 23, 1957.

Action by J. B. Pastras, doing business as J. B.
Pastras Realty, against Francis Oberlin and Esther
Oberlin for real-estate commissions claimed due.
Judgment for defendants. Plaintiff appeals. Af-
firmed.

*Sinas, Dramis & Brake* (*Lee C. Dramis,* of coun-
sel), for plaintiff.

*Russell A. Lawler,* for defendants.

SHARPE, J. This case involves the right of owners
of real estate to cancel a broker's agreement to sell
their property without becoming liable for a commis-
sion. The facts are not in dispute.

On July 17, 1956, defendants listed their house
for sale with plaintiff, a real-estate broker, for the
sum of $11,000. The listing was for a period of 6
months. Under the listing agreement defendants
agreed to pay a commission to plaintiff in the amount
of 10% of the selling price if the property was sold
within said 6-month period, and for a further 3
months if the property was sold to any person with
whom plaintiff had been negotiating for the sale
during the 6-month period.

On August 24, 1956, plaintiff verbally informed
defendants that he could sell the property for $9,500.
On August 28, 1956, plaintiff called defendants to in-

quire if defendants wished to accept the $9,500 offer. He was informed by defendants that they no longer wished to sell their property for the reason that a daughter and her children were coming to live with them. On September 1, 1956, defendants sent a registered letter to plaintiff informing him that they no longer wished to sell their home. On September 6, 1956, plaintiff informed Francis Oberlin that he could sell the house for $11,000, and he was again informed that the property was not for sale.

Since September 4, 1956, and prior thereto, defendants have continued to reside in the home and have not offered the premises for sale or taken any action to dispose of it. It has been stipulated that defendants' actions in notifying plaintiff that the listing was cancelled were done in good faith and not to avoid paying a commission.

Following the submission of briefs, the court rendered an opinion denying plaintiff the relief sought. In an opinion the court stated:

"In the instant case there was no consideration between the parties; the defendants offered their property for sale and agreed to pay a commission if the same were sold. Where the owner in good faith revokes the agency or withdraws the offer to sell before the broker procures a purchaser ready, willing and able to meet the owner's terms, the procurer is not entitled to compensation for securing a purchaser after the offer to sell is withdrawn. In this cause the listing was for the amount of $11,000, and the best price that the plaintiff could secure for the sale of the property prior to the cancellation of the listing was $9,500. After the listing had been terminated it is true he secured a purchaser who was willing to meet defendants' sale price, but by that date, September 6th, defendants had withdrawn the offer. The revocation was made in good faith on the part of the defendants.   *   *   *

"The record clearly indicates that the plaintiff did not produce a purchaser who was ready, willing and able to purchase the property on the terms of the listing, and that the defendant did not cancel said listing in order to avoid payment of the commission, or was not acting in bad faith. The defendants acted within their legal rights and plaintiff is not entitled to recover. Judgment may enter in favor of the defendants of no cause for action."

Plaintiff appeals and urges that the trial court was in error in holding that the listing agreement was revocable by the defendants. Plaintiff urges that the listing agreement was a bilateral contract and that the mutual promises of the parties was a sufficient consideration to make a binding contract. We are not in accord with the theory advanced by plaintiff. In *Schostak* v. *First Liquidating Corporation*, 320 Mich 406, 415, 416, we quoted with approval from 12 CJS, Brokers, § 66, pp 150, 151, as follows:

" 'The right of a broker to a commission is fixed at the time of his discharge in good faith. It depends on whether he has done the thing he undertook to do before his authority was terminated. * * * As applied to the ordinary contract of employment to sell property, for which there is no consideration other than the commission to be paid the broker and which may be considered as a mere offer that does not become an enforceable contract until it is performed by the broker, the rule means that where the owner in good faith revokes the agency or authority or withdraws the offer before the broker procures a purchaser ready, willing and able to purchase on the owner's terms, the broker is not entitled to compensation for procuring a purchaser thereafter or to a commission on a subsequent sale by the owner.

" 'Conversely, the owner cannot defeat the right of the broker to a commission or other compensation by terminating the agency after the broker has pro-

cured a purchaser ready, willing, and able to buy the property on the terms suggested by the owner and has communicated that fact to the owner.' "

In the case at bar the owners of the property, in good faith, withdrew the property from sale before the broker furnished a buyer ready, willing and able to purchase on the owners' terms. Under such circumstances the broker is not entitled to a commission.

The judgment is affirmed, with costs.

DETHMERS, C. J., and SMITH, EDWARDS, VOELKER, KELLY, CARR, and BLACK, JJ., concurred.