H. M. SELDON COMPANY *v.* CARSON.

1. Brokers—Real Property—Termination of Listing.
   A contract to list property exclusively with a broker is enforceable and the broker entitled to his commission if his contract to sell real estate contains a provision for exclusive sale rights and a reasonable time limit, the broker is able to show substantial performance of the duties imposed on him by the contract, and the owner himself makes the sale within the contract date.

2. Same—Real Property—Termination of Listing.
   The principal may be found to have promised that he will not terminate the broker's employment until the broker has had a reasonable time to find a customer if the broker promises to make specific efforts or otherwise gives consideration for the promise not to terminate.

3. Principal and Agent—Brokers—Termination of Agency Contract—Consideration.
   The rule that an agency relationship may not be terminated where it was given for a valuable consideration is an exception to the general rule that a principal may revoke the power of his attorney or agent at his mere pleasure or caprice.

4. Brokers—Termination of Listing—Good Faith—Consideration.
   The presence or absence of good faith is not material to the question of whether a principal may terminate a contract with a broker to list property exclusively when the listing was given for valuable consideration.

Appeal from Wayne; Farmer (Charles S.), J. Submitted Division 1 April 3, 1968, at Detroit.

References for Points in Headnotes
[1, 2, 4] 12 Am Jur 2d, Brokers §§ 220, 226 *et seq.*
[3] 3 Am Jur 2d, Agency § 34 *et seq.*

(Docket No. 3,786.) Decided June 3, 1968. Rehearing denied July 17, 1968. Leave to appeal denied September 24, 1968. See 381 Mich 776.

Complaint by H. M. Seldon Company, a Michigan corporation, against James Carson and Ursula Carson for breach of contract. Verdict and judgment for defendants. Plaintiff appeals. Reversed and remanded.

*Goldstein & Goldstein,* for plaintiff.

*Sugar, Schwartz & Silver,* for defendants.

McGregor, J.   Before us is the correctness of a trial court decision, holding that the owners of property on which they had given a six-month exclusive listing agreement to a broker, could cancel before the expiration of the listing without liability to the broker for damages, even though the broker had spent a substantial sum in his endeavor to sell.

In December, 1965, James Carson telephoned the H. M. Seldon Company, a real-estate brokerage office specializing in industrial and commercial property, and told Eldon K. Andrews, a vice-president of the real-estate company, that he would like to sell his real estate and business, and retire to Arizona. Mr. Andrews went to the property, met Mr. Carson, discussed the sale price and the value. After studying the property and consulting with other members of the H. M. Seldon Company, Mr. Andrews established the value of the property at between $350,000 and $400,000. Mr. Carson advised Mr. Andrews that he wanted to list the property for $500,000. Mr. Andrews told him that the price

was too high and that H. M. Seldon Company would not list it for that amount, unless Mr. Carson would pay the cost of advertising and promotion. After several trips to Mr. Carson's office and discussions, Mr. Andrews gave Mr. Carson two alternatives: Seldon Company would list the property for $400,000 and pay the cost of advertising and promotion; or would list it for $500,000 and Mr. Carson would pay the cost of advertising and promotion. It was finally agreed that the Seldon Company would pay the cost of advertising and promotion, and would list the property for $425,000.

A six month exclusive listing agreement, dated January 3, 1966, was drawn and executed, providing for a 6% selling commission, which agreement was examined by Mr. Carson and his attorney son. The listing agreement provided, in part:

"In consideration of your services in offering the following property for sale, I hereby give you an exclusive right from this date to 12 o'clock noon July 3, 1966 to find a purchaser for property known as * * * "

In furtherance of Seldon's attempt to sell the property, after receiving the listing, a brochure was prepared and proofs were submitted to and approved by Mr. Carson. Twenty copies of the finished brochure were given to Mr. Carson. The brochures were mailed by Seldon to a select mailing list of over 300 people, each accompanied by a personal letter. The property was advertised in newspapers: Mr. Andrews testified that a greater response than was anticipated was received from potential buyers, and that he showed the property to several people.

On March 14, 1966, the defendants sent a notice of revocation of the listing agreement to the Seldon

Company, without stating any reason, making prospective performance tantamount to impossible.

Mr. Carson had advised Mr. Andrews that he wished the listing to be handled in a confidential manner; Mr. Andrews testified that the listing was handled in a confidential manner throughout. Mr. Carson testified that the sole reason for cancelling the listing was that the employees in his business heard that he was selling and that a union agent from the cooks' union came to his place of business and told him that he understood that Carson was going to sell.

On March 21, 1966, one week after the revocation of the listing agreement, Carson entered into a listing agreement with Partridge & Associates, Inc., which provided for the sale of the identical property for the sum of $550,000. This listing agreement was for a period of one year. It did not provide that it was to be confidential or place any other restriction on dissemination of information regarding the listing. Upon receipt of the revocation, plaintiff started action for the commission provided for in the original listing agreement. The complaint alleged that the revocation of the listing agreement was made in bad faith and in violation of the plaintiff's contractual rights to an uninterrupted six-month exclusive listing, and asked for damages. The defendants relied on the defense that the plaintiff had not procured a buyer ready, willing, and able to purchase the premises at $425,000 and that the agreement was unilateral and cancellable by defendants at their will.

At the conclusion of the plaintiff's case, the trial judge granted a motion to dismiss, on the grounds that the plaintiff had not shown that the cancellation of the listing agreement was in bad faith. The plaintiff contended that, because the consideration

flowing from the plaintiff broker to the owner supports a binding obligation on the part of the owner, the contract is irrevocable for the six-month period.

The defendants maintain that a listing agreement is a unilateral contract and may be revoked at any time by the owner of the property before the broker presents a customer ready, willing, and able to purchase pursuant to the listing agreement, if that revocation is not made in bad faith, or with the intention to deprive the broker of a commission. Defendants further contend that a listing agreement requires a broker to render services in order to obtain a customer who would buy the premises on the terms set forth in the listing agreement, that this is the only contract, and that a consideration arises when the broker finds a customer ready, willing, and able to buy—until that time, it is a unilateral contract.

The plaintiff pleaded, and offered to prove at trial, the spending of approximately $5,000 in promotional efforts to sell the property, but on objection thereto by the defense counsel, the offer was rejected.

The defendants argue that the decision of the trial court is correct, and cite in support thereof the holding in *Pastras* v. *Oberlin* (1957), 350 Mich 183. The facts were different in that cited case: the owner had listed his house for sale with a broker for a period of six months. About six weeks later, the owners informed the broker that they no longer wished to sell their property for the reason that a daughter and her children were coming to live with them. It was stipulated that the owners' actions in cancelling were done in good faith. Our Supreme Court affirmed the trial court's determination that, under such circumstances, the broker was not entitled to a commission. In part, the law of *Pastras* has been superseded by the more recent

case of *Ladd* v. *Teichman* (1960), 359 Mich 587, 595, 596, in which the Supreme Court said:

"Thus it appears that where a contract to sell real estate contains a provision for exclusive sale rights and a reasonable time limit, and the broker is able to show substantial performance of the duties imposed upon him by the contract (even though he does not produce a buyer), when the owner makes the sale within the contract dates, the contract is held to be enforceable and the broker entitled to his commission.

"Against this statement of legal principles, our present case becomes simple to resolve. We deal here with a contract to sell real estate containing a specified time for performance, reciting in detail the duties of the broker under the contract and granting him an exclusive right to sell."

Part of the above quotation was cited with approval in the recent decision in *Seelye* v. *Broad* (1967), 379 Mich 289; in that opinion, the question presented was whether the owners had the right, with respect to their written authorization giving the broker the right to sell the property for a definite period, to terminate it before the expiration, and sell the property themselves without liability to the broker for the agreed commission. The Michigan Court of Appeals, in *Seelye* v. *Broad* (1966), 2 Mich App 177, relied upon its interpretation of *Schostak* v. *First Liquidating Corporation* (1948), 320 Mich 406, and *Pastras* v. *Oberlin, supra,* that the owner of real estate may, during the life of a listing agreement, but before the broker had produced a purchaser ready, willing, and able to buy on the listed terms, may rescind, sell the property himself, and not become obligated to the broker for the specified commission. This holding was reversed by the Supreme Court in their opinion of June 6, 1967, in which they quoted with approval

the law of 2 Restatement, Second, Agency, § 453, comment c, p 368:

"c. *When a promise not to terminate authority.* If there is merely an offer to pay compensation without a corresponding agreement to perform service, ordinarily the offer can properly be revoked at any time. This is true in the usual agreement with real estate brokers and, unless he acts in bad faith (see § 454), the principal commits no breach of contract and hence has to pay no commission if, on the eve of success by a broker, he withdraws the property from the broker's control for any reason. However, there are many variants. Thus, if the broker promises to make specific efforts or otherwise gives consideration therefor, the principal may be found to have promised that he will not terminate the employment until the broker has had a reasonable time in which to find a customer."

In the *Seelye* decision, Chief Justice Dethmers, speaking for the court, says, on p 293:

"With 'the preoccupation of the Michigan Court with the question of consideration as it relates to a claim for commission under a contract to sell real estate,' as stated in *Ladd,* it seems that the recital and acts of consideration present in this case require a holding for plaintiff under the meaning of the decision in *Ladd.* There are distinguishing factual features between the two cases but, on the fundamental principle that a consideration flowing from the realtor to the owner supports a binding obligation on the part of the latter, they are the same.

" 'To the general rule of law that a principal may revoke the power of his agent or attorney at his mere pleasure or caprice, there is a well-defined exception to the effect that where an authority or power is coupled with an interest, *or where it is given for a valuable consideration,* or where it is

part of a security, unless there is an express stipulation that it shall be revocable, it is, from its very nature and character, in contemplation of the law, irrevocable, whether it is expressed to be so on the face of the instrument conferring the power or not.' 7 ALR 947, Annotation. (Emphasis supplied.)"

The presence or absence of good faith exhibited by Carson in cancelling the exclusive listing agreement, and forthwith relisting the property for sale is not now material to our decision. There was ample consideration supplied by the plaintiff broker to support the subject listing agreement.

The holding of the circuit court is reversed and this matter is remanded to the trial court for a new trial consistent with this opinion. Costs to appellant.

J. H. GILLIS, P. J., and FITZGERALD, J., concurred.