WEITTING v McFEETERS

Docket Nos. 48012, 48060, 48165. Submitted January 6, 1981, at
Grand Rapids—Decided March 3, 1981.

Lucinda McFeeters, as owner of certain real property, entered
into an exclusive listing agreement with broker John M. Fair
to sell the property. Donald D. Weitting and Linda L. Weitting
signed an offer to purchase the property through Fair. Subse-
quently Fair received a notice from McFeeters terminating the
listing agreement. Thereafter, Richard F. Osborn, another bro-
ker, arranged the sale of the property to Raymond Walters and
Peggy Walters. The Weittings brought an action against Mc-
Feeters and Fair seeking specific performance of their offer to
purchase and other equitable relief which would enable them
to gain possession of the property and against the Walterses
and Osborn for damages due to tortious interference with the
contractual relationship between McFeeters and Fair. Fair filed
a cross-complaint against McFeeters for breach of the listing
agreement and against Osborn for tortious interference with
the contractual relationship between himself and McFeeters.
McFeeters moved for summary judgment against the Weittings
and Fair, and the Walterses and Osborn moved for summary
judgment against the Weittings. The trial court denied all
motions. McFeeters sought leave to appeal to the Court of
Appeals which denied her application but remanded the case to
the trial court for reconsideration of the motions for summary

REFERENCES FOR POINTS IN HEADNOTES

[1] 12 Am Jur 2d, Brokers § 80.
[2, 4] 45 Am Jur 2d, Interference §§ 1, 7, 50.
  Liability for interference with at will business relationship. 5
  ALR4th 9.
[3] 45 Am Jur 2d, Interference §§ 4, 11.
  Liability for interference with at will business relationship. 5
  ALR4th 9.
[5] 45 Am Jur 2d, Interference § 43.
[6] 12 Am Jur 2d, Brokers § 225.
[7] 12 Am Jur 2d, Brokers § 226.
[8] 20 Am Jur 2d, Courts § 154.
[9] [No reference]

judgment as to the principal complaint. All defendants renewed their motions upon remand, and the trial court again denied all motions, St. Joseph Circuit Court, John E. Morley, J. Osborn, McFeeters, and Peggy J. Walters in her own right and as the survivor of Raymond E. Walters sought leave to appeal, which leave was granted by the Court of Appeals. The appeals were consolidated by the Court of Appeals. *Held:*

1. The trial court erred in denying summary judgment in favor of McFeeters, Osborn, and the Walterses, there being no contract binding McFeeters to sell the land to the Weittings.

2. The trial court erred in denying summary judgment in favor of the Walterses and Osborn on the Weittings' claim of tortious interference and in failing to grant the Walterses' motions to dismiss Fair's complaint for tortious interference.

3. The trial court erred in denying Fair an opportunity to prove McFeeters' breach of the listing agreement.

4. Fair should be allowed to pursue his cross-complaint upon remand in the circuit court if in the court's opinion it would be unfair to require him to file anew in district court.

Reversed in part, affirmed in part, and remanded.

1. BROKERS — REAL PROPERTY — AUTHORITY OF REAL ESTATE BROKERS — LISTING AGREEMENTS.

A real estate broker, employed to make a sale of real estate, has no authority to collect payments unless specially authorized to do so, but a limited authority to accept special deposits does not confer the .additional special authority required to bind a principal to a sale in the absence of explicit language in the listing agreement granting such power.

2. TORTS — ACTIONS — INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS.

A cause of action for tortious interference with an advantageous business relationship may arise even though the relationship is not evidenced by a formal contract.

3. TORTS — ACTIONS — INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS.

Knowledge of a business relationship by one who interferes with the relationship, of itself, is insufficient to give rise to a cause of action for tortious interference with an advantageous business relationship; the interference must be intentional and improper.

4. TORTS — ACTIONS — INTERFERENCE WITH ADVANTAGEOUS BUSINESS
   RELATIONSHIPS.
   An improper interference with an advantageous business rela-
   tionship which would give rise to a cause of action consists of
   inducing or otherwise causing a third person not to enter into
   or continue a prospective relationship or preventing another
   from acquiring or continuing a prospective relationship.

5. TORTS — REAL PROPERTY — INTERFERENCE WITH ADVANTAGEOUS
   BUSINESS RELATIONSHIPS — OFFERS TO PURCHASE REAL ESTATE.
   The placing of an offer to purchase real property with the
   knowledge that another offer to purchase the same property is
   outstanding does not amount to an improper interference with
   an advantageous business relationship per se; something more
   than simple outbidding or outmaneuvering is needed, such as
   conduct which is illegal, unethical, or fraudulent.

6. AGENCY — AGENT'S COMPENSATION — CONTRACTS TO PROCURE
   TRANSACTIONS.
   An agent whose compensation is conditional upon procuring a
   transaction on specified terms is not entitled to such compensa-
   tion where the principal, acting in good faith, enters into a
   transaction on different or modified terms less favorable to the
   principal although the principal benefits thereby.

7. BROKERS — CONTRACTS TO SELL REAL ESTATE — BROKERS' COMMIS-
   SIONS — LISTING AGREEMENTS.
   A real estate broker who has entered into a contract to sell real
   estate is entitled to a commission upon the sale of the real
   property by the owner of the property within the contract dates
   where the contract contains a provision for exclusive sale rights
   and a reasonable time limit and the broker is able to show
   substantial performance of the duties imposed upon him by the
   contract even though he does not produce a buyer.

8. ACTIONS — CROSS-CLAIMS — JURISDICTIONAL AMOUNTS — DISMISSAL
   OF CLAIMS — REMOVAL OF CROSS-CLAIMS.
   A cross-claim arising out of the transaction or occurrence that is
   the subject matter of the original action may be brought in a
   circuit court regardless of the sum of money requested, and
   upon dismissal of the primary claim the trial court should
   allow a cross-claimant to pursue his claim in the circuit court
   where, in the opinion of the court, it would be unfair to require
   him to file anew in the lower court (GCR 1963, 203.3, 707.2).

9. ACTIONS — CROSS-CLAIMS — REMOVAL OF CROSS-CLAIMS.
   A cross-claim arising out of an action brought in a circuit court

may not be removed to a lower court where the primary claim is still before the circuit court (GCR 707.2).

*Gergely & Foley, P.C.* (by *Robert D. Mollhagen),* for plaintiffs.

*Early, Starbuck & Lennon* (by *Harold E. Fischer, Jr.),* for defendant/cross-defendant Lucinda Mc-Feeters.

*Bush & Bush,* for defendant/cross-plaintiff John M. Fair.

*James H. Geary,* for third-party defendant Peggy J. Walters.

*Lilly & Domeny, P.C.,* for third-party defendant Richard F. Osborn.

Before: ALLEN, P.J., and J. H. GILLIS and D. F. WALSH, JJ.

ALLEN, P.J. Plaintiffs (Weitting), the unsuccessful buyers of a 125-acre farm and buildings, sued defendant (McFeeters), the former owner and seller of the farm, her broker (Fair), the successful purchasers and present occupants of the farm (Walters), and their broker (Osborn) for breach of contract and for tortious interference. Fair, as cross-plaintiff, sued McFeeters as cross-defendant for the commission for the alleged sale of the property to plaintiffs. On August 16, 1979, the trial court denied various motions for accelerated and summary judgment. Appeal on a concise statement of proceedings and facts certified by the trial court comes to us by leave granted. A summary of the concise statement of facts follows:

In February, 1977, Lucinda McFeeters, the then owner of a 125-acre farm in St. Joseph County,

entered into an exclusive listing agreement with John M. Fair, a real estate broker, to sell the farm for $80,000 with possession of the land and buildings to be given at closing. The agreement provided that Fair would be paid a 6% commission if he procured a buyer within six months. On April 16, 1977, plaintiffs, Donald and Linda Weitting, signed an offer to purchase the McFeeters farm for $80,000 and gave Fair a $1,000 deposit. The offer to purchase provided that sale was to be closed on or before May 18, 1977, with possession to be given "land, day this agreement is signed, buildings, 30 days after closing". The purchase offer was signed by the Weittings and witnessed but was not signed by Lucinda McFeeters although her name was typed under the signature line on the printed form indicating the seller's acceptance. Nevertheless, despite the absence of Mrs. McFeeters' signature, it is alleged that Fair, by virtue of the exclusive listing agreement, had authority to accept the offer and did accept said offer thereby binding McFeeters to the sale of her farm.

On April 21, 1977, McFeeters notified Fair by registered mail, return receipt requested, that she was terminating the listing agreement. The return receipt indicates Fair received the notice to terminate on April 22nd. Also, on April 21st, Fair, having been unable to contact McFeeters for three days after April 16th, sent McFeeters a letter by registered mail, return receipt requested, informing her of the Weittings' offer to purchase. The return receipt indicates that McFeeters received this letter April 27th. Thereafter, Richard F. Osborn, a realtor and third-party defendant, arranged for the sale of the farm to third-party defendants Peggy and Raymond Walters. At the time this sale was completed, the Walterses alleg-

edly knew of the Weittings' prior offer to purchase and knew that Fair had stated that the farm had been sold to the Weittings. Nevertheless, the sale was completed by deed signed May 6 and recorded May 17, 1977.

Plaintiffs' second amended complaint contains five counts. Counts I through IV are directed against defendants McFeeters and Fair and allege in substance that Fair, by virtue of the exclusive listing agreement, had authority to accept and did accept the Weittings' offer and that, because the offer was accepted, a binding contract came into existence divesting McFeeters of the legal capacity to execute a deed to the Walterses. Counts I through IV request specific performance and other equitable relief which would give plaintiffs possession of the farm. Count V is directed against the third-party defendants, the Walterses and Osborn, alleging that they tortiously interfered with the contract relationship between Fair and McFeeters, said contract having arisen by Fair's alleged authority to accept the offer on behalf of McFeeters. Count V requests money damages from the third-party defendants.

The cross-complaint of Fair, filed subsequently, consists of two counts. Count I alleges that McFeeters breached her listing agreement with Fair and requests specific performance of the Weittings' offer to purchase. Count II is a complaint for money damages against realtor Osborn for tortious interference with the contractual relations between himself and McFeeters.

In the fall of 1978, McFeeters moved for summary judgment on the second amended complaint of plaintiffs and also moved for summary judgment on the cross-complaint of Fair. Likewise, third-party defendants, the Walterses and Osborn,

moved for summary judgment on the second amended complaint of plaintiffs. All motions set forth multiple grounds, not necessary to detail at this time, for granting summary judgment. Following a hearing held in September, 1978, all motions were denied. Application for leave to appeal was made in this Court which, by order dated March 28, 1979, remanded the case to the trial court for "reconsideration of the motions for summary judgment as to the principal complaint in light of *Landskroener v Henning,* 221 Mich 558, 566-567; 191 NW 943 (1923), *Theisen v Folker,* 234 Mich 542; 208 NW 700 (1926), *Caspar Hoffman Co v King,* 237 Mich 9; 211 NW 36 (1926), and *Goldberg v Sosnowski,* 244 Mich 515; 221 NW 617 (1928)".

Upon remand, all defendants renewed their motions for summary judgment, and affidavits were filed in support thereof. Following a hearing thereon, the trial court issued an opinion dated August 16, 1979, denying all motions. The court stated that a material question of fact existed as to whether knowledge by defendants of plaintiffs' offer to purchase would support a cause of action for tortious interference with a business or contractual relationship. This Court granted leave to appeal April 30, 1980.

From the foregoing, necessarily prolongated, statement of facts, three issues emerge. (I) Did the offer of purchase and the acceptance of the down payment by Fair constitute a binding contract for the sale of land by McFeeters to plaintiffs? If, as a matter of law, it did not, the trial court erred in not granting summary judgment in favor of McFeeters. (II) Did third-party defendants tortiously interfere with a business relationship between plaintiffs and McFeeters? If, as a matter of law, they did not, the trial court erred in not granting

summary judgment in favor of third parties. (III) Is Fair entitled to a real estate commission from McFeeters? If, as a matter of law, he is not so entitled, the trial court erred in not granting summary judgment to McFeeters on Fair's cross-complaint. But if the trial court did not err on issue III, then a fourth issue arises as to whether trial should continue in circuit court or be transferred to district court.

## I

It is plaintiffs' claim that even though McFeeters did not sign the purchase agreement the exclusive listing agreement conferred authority on Fair to bind McFeeters. Plaintiffs point to the fact that the listing agreement specifically gives the broker the power to collect payments for his client and contend that this language confers upon the broker authority to conclude a sale even in the client's absence. It is true that a real estate broker, employed to make a sale of real estate, has no authority to collect payments unless specially authorized to do so. 8 Am Jur, Brokers, § 59, pp 1016-1020, *Triphagen v Labbe,* 332 Mich 583, 586; 52 NW2d 226 (1952). But the limited authority to accept special deposits does not confer the additional special authority required to bind the principal to a sale. The four cases mentioned in this Court's order remanding this case to the trial court clearly hold that, in the absence of explicit language granting the power, a listing agreement does not confer authority on the broker to bind his principal to a contract for the sale of land. In *Sosnowski, supra,* 516, where the listing agreement contained the language "accept a deposit to be applied on the purchase price *and to bind the sale* * * *" (emphasis supplied), the Court held the

language sufficient to bind the principal. But in *Triphagen, supra,* where the language only gave power to the broker to accept deposit monies, the Court held that authority to bind the principal had not been granted. Nothing in the listing agreement specifically confers upon Fair the requisite authority to bind McFeeters to an offer to purchase without further action on her part. There being no contract binding McFeeters to sell the land, we hold that the trial court erred in not granting summary judgment in favor of McFeeters, Osborn, and the Walterses, as to Counts I through IV of plaintiffs' complaint.

## II

Having decided that there was not an enforceable contract between McFeeters and plaintiffs, it follows that a claim for tortious interference of contract could not be maintained. While this is true, it is important to keep in mind that in the instant case plaintiffs have sued both on the theory of a tortious interference of a valid contract and on tortious interference of a business relationship not necessarily reduced to a formal contract. *Northern Plumbing & Heating, Inc v Henderson Bros, Inc,* 83 Mich App 84, 93; 268 NW2d 296 (1978), recognizes the tort of interference with an advantageous business relationship even though the relationship is not evidenced by a formal contract. The trial court recognized the distinction and assigned it as one reason for denying summary judgment. In addition, the trial court explained that it denied summary judgment on grounds that a question of fact existed as to whether or not the third-party defendants knew of plaintiffs' offer to purchase.

For purposes of ruling on the motion for sum-

mary judgment, we must assume that third-party defendants, the Walterses and their broker, Osborn, were well acquainted with the Weittings' offer and had knowledge of Fair's statement that the farm had been sold. However, knowledge of a business relationship will not in itself give rise to a cause of action for tortious interference. The interference must be both intentional and improper.

"One who intentionally and *improperly* interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of

"(a) inducing or otherwise causing a third person not to enter into or continue a prospective relation, or

"(b) preventing the other from acquiring or continuing the prospective relation." 4 Restatement Torts, 2d, § 766B, p 20. (Emphasis added.)

The allegations contained in Count V of plaintiffs' second amended bill of complaint allege that third-party defendants had knowledge of the Weitting-Fair contract but fail to allege any facts that would indicate *improper* interference. Similarly, paragraph 4 of Count II of Fair's cross-bill of complaint against Osborn alleges that Osborn had knowledge of the Weittings' offer to purchase but alleges no facts disclosing impropriety. In our competitive free enterprise system, the placing of another offer to purchase is not per se a violation. This was the position expressed by Judge O'HARA in his dissenting opinion in *Meyering v Russell,* 53 Mich App 695, 709-710; 220 NW2d 121 (1974), which was adopted by reference on appeal to the Supreme Court, 393 Mich 770; 224 NW2d 280 (1974). In finding that an offer of another bid to

purchase real property was not tortious interference, Judge O'HARA stated:

"Other than the perfectly legal act of making an offer to purchase the involved property with knowledge of the Meyering land contract nothing appears of record which would indicate that Dietz resorted to any unlawful methods of competition or used illegal means to obtain the property from Russell at Meyering's expense.

"Where 'dickering' as we know the term in our system is going on there is nothing legally impermissible in trying to better an offer that has had conditional acceptance only.

"To me there must be more than simple outbidding, and even outmaneuvering. A free economic society can be so hampered by limitations upon the exercise of business judgment or acumen that backyard discussions can grow into executed contracts supporting actions for tortious interference.

"I don't see anything defendant Dietz did in this case other than make a more acceptable offer to the fee owner of a parcel of realty."

In the absence of any allegation that third-party defendants or their broker, Osborn, did anything illegal, unethical, or fraudulent, we are compelled to rule that the trial court erred in not granting third-party defendants' motion for summary judgment on Count V of plaintiffs' bill of complaint and in not granting the Walterses' motion to dismiss Count II of Fair's cross-bill of complaint.

## III

The remaining issue in this case is whether the trial court should have granted McFeeters' motion for summary judgment on Count I of Fair's cross-complaint. Count I requests specific performance of the Weittings' offer to purchase and alternatively prays that the court order Lucinda McFeeters to

pay the sum of $4,800 as the commission "for securing a purchaser for her property under the terms of the exclusive listing agreement * * *". The question posed is whether, based on the allegations in the cross-complaint which we must assume to be true, this Court must conclude that *as a matter of law* Fair is not entitled to a broker's commission. Fair did produce a purchaser who did offer the exact price McFeeters asked for the farm. The sole difference between the Weittings' offer to purchase and the listing agreement was that under the listing agreement possession would be given the purchaser "upon delivery of abstract and deed", whereas the offer to purchase called for possession of the land "day this agreement is signed" and possession of the buildings "30 days after closing". Is this such a difference that as a matter of law and without the taking of testimony Fair is precluded from a commission? Counsel for cross-complainant argues that the Weitting offer was more favorable to McFeeters than the listing agreement since it gave McFeeters 30 more days before she need surrender possession of the farmhouse and other buildings. Conversely, it can be argued that the demand for immediate possession of the land (then being farmed by a third party) was, or could be, a detriment to the owner.

2 Restatement Agency, 2d, § 447, p 354 and comment reads:

"An agent whose compensation is conditional upon procuring a transaction on specified terms is not entitled to such compensation if, as a result of his efforts, a transaction is effected on different or modified terms, although the principal thereby benefits.

"Comment:

"a. *Strictness of the rule.* The rule stated in this Section gives effect to the bargain the parties have

made, but the harshness of the result frequently gives a reason for avoiding an interpretation by which such an exacting condition is found in the principal's promise. However, a clearly expressed condition that the principal will pay a commission only if the agent's services result in a transaction with another on specified terms is binding, and the agent is not entitled to a commission if the principal, acting in good faith, enters into a transaction with another procured by the agent, *but with terms less favorable to the principal."* (Emphasis added.)

No facts are given us in the briefs or affidavits which assist us in determining whether plaintiffs' conditions for the time of possession of land and buildings were more favorable or less favorable to the seller. In the absence of proofs, this question cannot be answered. Since summary judgment would preclude the taking of proofs, we hold that the trial court did not err in denying summary judgment on Count I of the cross-complaint.

A more compelling reason for affirming the trial court on this issue is found in the decisions in *Ladd v Teichman,* 359 Mich 587, 595; 103 NW2d 338 (1960), and *Seelye v Broad,* 379 Mich 289; 150 NW2d 785 (1967). In *Ladd* the Court said:

"Thus it appears that where a contract to sell real estate contains *a provision for exclusive sale rights and a reasonable time limit, and the broker is able to show substantial performance of the duties imposed upon him by the contract (even though he does not produce a buyer),* when the owner makes the sale within the contract dates, the contract is held to be enforceable and the broker entitled to his commission." (Emphasis supplied.)

In *Seelye,* the broker was given an exclusive listing to sell within a 24-hour period. During that

period, he obtained a buyer who submitted an offer different from the vendor's asking terms. The vendor rejected the offer and proceeded to sell to a third party, but within the 24-hour period the broker again went to the intended buyer who then offered to purchase on terms precisely identical to the terms set forth in the listing agreement. In a suit by the broker against the vendor for his commission, the Supreme Court, reversing the Court of Appeals,[1] held that the vendor's offer was irrevocable for the 24-hour period and that since during that period the broker had substantially performed he was entitled to a commission. The *Seelye* decision was commented on in Vernava, *Contracts and Sales,* 14 Wayne L Rev 199, 201-202 (1967), as follows:

"The supreme court is obviously correct on the law that an offer for a certain time must remain open for that time if it is supported by consideration. This is a true option. Moreover, a recital of consideration will usually be sufficient to support a contract. But in *Seelye* the consideration to support the contract was attenuated and remote. The recital was really *the effect* of the exclusive agency rather than the motivational cause of the relationship. While there is some precedent to support the court in implying consideration in an exclusive agency, the result in *Seelye* is better supported on a policy basis. A broker who is designated as exclusive agent for a certain time should be assured that his position for the period will not be undermined by the vendor, who initially could have given the broker only a non-exclusive agency. Further, the expectations of the parties are that the broker will more likely than not bring in counter-offers to the original offer, and consequently the vendor should not be permitted to revoke the efficacy of the agency as soon as this happens. The decision is, therefore, consistent with commercial reality."

[1] *Seelye v Broad,* 2 Mich App 177; 139 NW2d 126 (1966).

See also *H M Seldon Co v Carson,* 11 Mich App 613; 162 NW2d 86 (1968), 1 Corbin on Contracts, § 50, p 203.

The facts alleged in the instant case comport with the underscored language quoted earlier in *Ladd.* Cross-plaintiff Fair was given exclusive sale rights and a six-month period within which to perform. Within the time period Fair substantially performed by producing a buyer whose offer to purchase substantially met the terms set forth in the listing agreement. At the end of approximately two months from the date of the listing agreement, the vendor canceled the listing agreement and sold the property to a third party. Given the above case law, it is immaterial whether plaintiffs' offer to purchase was more or less favorable to McFeeters than the terms set forth in the listing agreement. Clearly, the vendor was without the authority to terminate the exclusive listing agreement before six months had elapsed. Cross-complainant should be given the opportunity at trial to prove the allegations made in Count I of his cross-complaint. Remand on this issue is ordered.

## IV

Having decided that Count I of Fair's cross-complaint should be remanded for trial on the merits, we next inquire whether jurisdiction no longer lies in the circuit court because the amount claimed is less than $10,000. That issue was raised by Osborn but was not decided by the trial court and is now moot in view of our decision that Fair has no claim against Osborn. However because the issue may be raised by McFeeters upon remand we proceed to respond to it now.

Under GCR 1963, 203.3, a cross-claim arising out

of the "transaction or occurrence that is the subject matter * * * of the original action" may be brought regardless of the sum of money requested. Under GCR 1963, 707.2, the cross-claim may not be removed as long as the primary complaint is still alive in circuit court. But must a cross-claim under $10,000 be removed when, as here, the primary complaint is dismissed? The question is of first impression.

Michigan's court rule regarding cross-claims, GCR 1963, 203.3, was adopted verbatim from FR Civ P 13(g). The Federal courts have addressed the identical question raised here and uniformly held that jurisdiction is not necessarily lost. The cases hold that the decision of whether to dismiss the cross-claim or remove it to the state court upon dismissal of the primary claim is a matter for the trial court's discretion. *United Mine Workers of America v Gibbs,* 383 US 715; 86 S Ct 1130; 16 L Ed 2d 218 (1966), *Arizona v Cook Paint & Varnish Co,* 541 F2d 226 (CA 9, 1976), *Parris v St Johnsbury Trucking Co, Inc,* 395 F2d 543 (CA 2, 1968).

We conclude the same procedure should be followed here. Upon remand, the trial court should allow cross-plaintiff, Fair, to continue to pursue his claim in circuit court if in the court's opinion it would be unfair to require him to file anew in district court.

Reversed and remanded for proceedings in accordance with this opinion. Costs to defendants on the bill of complaint. Costs to cross-plaintiff on Count I of the cross-complaint.