MICHIGAN PODIATRIC MEDICAL ASSOCIATION v NATIONAL
FOOT CARE PROGRAM, INC

Docket No. 98350. Submitted October 14, 1988, at Detroit. Decided
    March 20, 1989. Leave to appeal applied for.

    National Foot Care Program, Inc., licensed in 1984 under MCL
    333.21042; MSA 14.15(21042) as a health care delivery system
    operated for profit, entered into a contract with Chrysler Corpo-
    ration to provide podiatric services for Chrysler employees.
    Previously, full coverage for podiatric services was available to
    Chrysler employees under a plan with Blue Cross and Blue
    Shield of Michigan. The Michigan Podiatric Medical Associa-
    tion and several podiatrists who used to provide services to
    Chrysler employees under the former Blue Cross and Blue
    Shield program brought an action in Wayne Circuit Court
    against National Foot Care. Plaintiffs alleged that the statute
    under which defendant was licensed represents an unconstitu-
    tional delegation of legislative power to the Department of
    Public Health and the Insurance Bureau, that defendant was
    operating in violation of the Prudent Purchaser Act, the Non-
    profit Health Care Corporation Reform Act and the Insurance
    Code, and that defendant had tortiously interfered with an
    advantageous business relationship. The trial court, James J.
    Rashid, J., denied plaintiffs' request for a declaratory judgment,
    granted summary disposition in favor of defendant and dis-
    missed the action. Plaintiffs appealed.

    The Court of Appeals held:

    1. MCL 333.21042; MSA 14.15(21042) is not unconstitution-
    ally vague nor does it represent an unconstitutional delegation
    of legislative authority. Given the complexity involved in regu-
    lating health care delivery systems such as defendant, the
    delegation of discretion to the Department of Public Health
    with regard to regulation is necessary and not unconstitutional.

REFERENCES

Am Jur 2d, Administrative Law §§ 100 et seq.; Constitutional Law
    §§ 332-359; Declaratory Judgments §§ 33-41; Interference §§ 3 et
    seq., 50.
See the Index to Annotations under Declaratory Judgments or
    Relief, Delegation of Powers, and Interference and Obstruction.

Furthermore, the public is protected from the arbitrary exercise of regulatory power under § 21042 since the Department of Public Health and the Insurance Bureau must act with advice from the Health Facilities and Agencies Advisory Commission.

2. The Prudent Purchaser Act, which applies to insurers, dental care corporations, hospital service corporations, medical care corporations, health care corporations and third party administrators, does not apply to defendant since defendant does not fit within the statutory definition of any of the entities subject to the act.

3. The Nonprofit Health Care Corporation Reform Act does not apply to defendant since defendant is not a nonprofit corporation.

4. The Insurance Code does not apply to defendant since defendant is not an insurer.

5. Plaintiffs failed to state a claim under MCL 333.21054(3); MSA 14.15(21054)(3), which prohibits anticompetitive pricing of prudent purchaser agreements by health maintenance organizations, since defendant is not a health maintenance organization, much less a health maintenance organization offering a prudent purchaser agreement.

6. A prima facie case of tortious interference with a business relationship cannot be established in this case since it cannot be shown that defendant's conduct was wrongful per se or undertaken illegally and without justification.

7. The existence of an actual controversy is a condition precedent to invocation of declaratory relief. Here, the only bases alleged for plaintiffs' asserted right to declaratory relief were defendant's alleged unconstitutional actions, statutory violations and tortious conduct. Dismissal of these various claims on their merits made moot any claim to declaratory relief.

Affirmed.

1. ADMINISTRATIVE LAW — DELEGATION OF POWER — STATUTES.

In determining whether the limits on the exercise of discretion conferred by a statute on an administrative official are sufficiently defined to avoid an unconstitutional delegation of legislative power, (1) the act in question must be read as a whole and the provision in question construed with reference to the entire act, (2) the standard should be as reasonably precise as the subject matter requires or permits, (3) if possible, the statute must be construed as valid, i.e., it must be construed as conferring administrative, not legislative, power and as giving discretionary, not arbitrary, authority, and (4) the statute must satisfy due process requirements.

2. HEALTH — QUASI-HEALTH MAINTENANCE ORGANIZATIONS — STAT-
    UTES.

   The statute under which a system of health care delivery which
   does not meet the requirements set by the Public Health Code
   for health maintenance organizations may be granted an oper-
   ating license and be subject to the same regulations that apply
   to health maintenance organizations, except those regulations
   which the Department of Public Health and the Insurance
   Bureau with the advice of the Health Facilities and Agencies
   Advisory Commission deem inappropriate, is not unconstitu-
   tionally vague nor does it represent an unconstitutional delega-
   tion of legislative authority (MCL 333.21042; MSA
   14.15[21042]).

3. TORTS — INTERFERENCE WITH BUSINESS RELATIONSHIP.

   The elements of a claim of tortious interference with a business
   relationship are (1) the existence of a valid business relation-
   ship or expectancy; (2) knowledge of the relationship or expec-
   tancy by the interferer; (3) an intentional, improper, interfer-
   ence inducing or causing a breach or termination of the rela-
   tionship or expectancy; and (4) resultant damage to the party
   whose relationship or expectancy has been disrupted.

4. TORTS — INTERFERENCE WITH BUSINESS RELATIONSHIP.

   One who alleges tortious interference with a contractual or
   business relationship must allege the intentional doing of a per
   se wrongful act or the doing of a lawful act with malice and
   unjustified in law for the purpose of invading the contractual
   rights or business relationship of another.

5. DECLARATORY JUDGMENTS — ACTUAL CONTROVERSY.

   The existence of an actual controversy is a condition precedent to
   invocation of declaratory relief.

*McGinty, Brown, Jakubiak, Frankland & Hitch,
P.C. (by Thomas M. Hitch)*, for plaintiffs.

*Cook, Pringle & Goetz (by John A. Cook* and
*Peter L. Conway)*, for defendant.

Before: WEAVER, P.J., and MAHER and C. W.
SIMON, JR.,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

C. W. SIMON, JR., J. Plaintiffs, Michigan Podiatric Medical Association and eleven individual podiatrists, appeal as of right from an order granting summary disposition to defendant, National Foot Care Program, Inc., a for-profit corporation, licensed in 1984 under MCL 333.21042; MSA 14.15(21042) as an experimental or alternative health care maintenance organization.

Prior to July, 1986, full coverage for podiatric services was available for Chrysler Corporation employees who obtained foot care from podiatrists participating in Blue Cross and Blue Shield of Michigan's health care program. In 1986, defendant contracted with Chrysler Corporation to provide podiatric services for covered employees in exchange for a preset fee paid by Chrysler. As of July 1, 1986, Chrysler provided full coverage for podiatric services only if an employee used a podiatrist associated with defendant. If an employee chose an unassociated podiatrist, the employee would be reimbursed fifty percent of the cost of the service or fifty percent of the approved payment, whichever was less. The individual plaintiffs are not designated podiatrists under defendant's contract with Chrysler.

Plaintiffs filed a complaint against defendant alleging that, as a result of the change in provision of health care services at Chrysler, plaintiffs have lost patients and income and suffered damage to their reputations. In a thorough, well-written opinion, the trial court found defendant entitled to summary disposition on each claim in plaintiffs' complaint. We affirm.

I

Plaintiffs first claim that the statute authorizing the creation and operation of defendant is unconstitutionally vague.

Defendant was licensed under MCL 333.21042; MSA 14.15(21042), which provides:

> A person proposing to operate a system of health care delivery and financing which is to be offered to individuals, whether or not as members of groups, in exchange for a fixed payment and organized so that providers and the organization are in some part at risk for the cost of services in a manner similar to a health maintenance organization, but fails to meet the requirements set forth in this part, may operate such a system if the department and insurance bureau find that the proposed operation will benefit persons who will be served by it. The operation shall be licensed and regulated in the same manner as a health maintenance organization under this part including the filing of periodic reports, except to the extent that the department and insurance bureau, with the advice of the advisory commission, agree that the regulation is inappropriate to the system of health care delivery and financing. A person operating a system of health care delivery and financing pursuant to this section shall not advertise or solicit or in any way identify itself in a manner implying to the public that it is a health maintenance organization licensed under this article.

Plaintiffs argue that the statute represents an unconstitutional delegation of legislative authority because it fails to provide sufficiently definite guidelines for the administrative bodies (the Department of Public Health and the Insurance Bureau) in connection with the licensing and regulation of alternative health care delivery systems.

The test for determining whether the limits on the exercise of discretion conferred on an administrative official are sufficiently defined to avoid an unconstitutional delegation of legislative power was set forth by our Supreme Court in *Dep't of*

*Natural Resources v Seaman,* 396 Mich 299, 309; 240 NW2d 206 (1976).

First, the act in question must be read as a whole; the provision in question must be construed with reference to the entire act. Next, the standard should be as reasonably precise as the subject matter requires or permits. Third, if possible, the statute must be construed as being valid, that is, it must be construed as conferring administrative, not legislative, power and as giving discretionary, not arbitrary, authority. Last, the statute must satisfy due process requirements. [*Attorney General v Public Service Comm,* 161 Mich App 506, 510; 411 NW2d 469 (1987), lv den 429 Mich 879 (1987), citing *Seaman, supra.*]

We find the trial court's analysis of § 21042 under the *Seaman* test accurate and adopt it as our own. The court reasoned:

[MCL 333.21042; MSA 14.15(21042)] is part of the health maintenance organization act, [MCL 333.21001 *et seq.;* MSA 14.15(21001) *et seq.*], being part 210 of the Public Health Code. The apparent purpose of the act is to regulate by means of licensing requirements so called health care maintenance organizations (HMOs). In general an HMO is a prepaid plan where the participant pays beforehand for the services themselves. *United States Fidelity & Guaranty Co v Group Health Plan of Southeast Michigan,* 131 Mich App 268, 272 [345 NW2d 683] (1983). The act, however, provides a special definition of an HMO which in part is dependent upon the type of services offered under a health maintenance contract offered by the HMO to its subscribers. [MCL 333.21005(1) and (2); MSA 14.15(21005)(1) and (2), MCL 333.21007; MSA 14.15(21007)]. The act provides that a health maintenance organization must be licensed under the act before issuing health maintenance contracts. [MCL 333.21011; MSA 14.15(21011)]. The act also

extends its licensing requirements to HMOs that do not fit within the statutory definition of an HMO, and it is to this purpose that [§ 21042] addresses itself.

Given this statutory scheme the court turns its attention to whether [§ 21042] confers on the administrative agencies named in said statute an unconstitutional delegation of authority to dispense with the various licensing and regulatory requirements applicable to statutorily defined HMOs. As recognized by both parties, the key phrase in the statute as to this, is the term "inappropriate." The question is whether "inappropriate" is too vague a standard for the administrative agencies to act under.

In a similar context the court in *K Mart Corp v Dep't of State,* 127 Mich App 390, 395 [339 NW2d 32] (1983), lv den 418 Mich 933 (1984)[,] noted:

"Statutory language is construed 'according to the common and approved usage of the language.' MCL 8.3a; MSA 2.212(1), see *People v Lee,* 66 Mich App 5, 8; 238 NW2d 397 (1975). A resort to dictionary definitions is an appropriate method of achieving this result. *Fenton Area Schools v Sorensen-Gross Construction Co,* 124 Mich App 631; 335 NW2d 221 (1983), see *State ex rel Wayne County Prosecutor v Levenburg,* 406 Mich 455, 465; 280 NW2d 810 (1979)."

In Webster's Third New International Dictionary (unabriged)(1965), 1140, the word inappropriate is defined to mean "not appropriate, unbecoming, unsuitable." Thus, under [§ 21042] administrative agencies are empowered to exempt a particular nonstatutory HMO (i.e., one that does not fulfill the statutory definition of an HMO) from specific regulatory requirements if the agencies find that the regulation would not be appropriate or suitable to the particular HMO. This is not a standardless determination but rather one that requires the administrative agencies to exercise their expertise in the complex area of HMO regulation to determine whether a regulation which was originally designed to regulate statutorily defined HMOs

should also apply to non-statutory HMOs given the distinction between the two. While the standard thus is a general one, given the uncontested complexity of HMO regulation, the court adjudges the standard to be as reasonably precise as the subject matter requires or permits, and thus, under the *Seamen* [sic, *Seaman*] standards does not constitute an unconstitutional delegation of authority.

While the trial court did not specifically analyze the phrase "to benefit persons who will be served by it," we do not find this standard unconstitutionally vague. Given the complexity of the subject, the regulation of variations of health maintenance organizations would likely require constantly changing promulgated regulations. Delegation of discretion to the Department of Public Health to choose the relevant health maintenance organization regulations which should apply in a particular case is necessary and not unconstitutional.

Finally, we note that the public is protected from arbitrary use of § 21042 because the decision as to appropriate regulation has a high degree of proximity to the elective process. *People v O'Neal,* 122 Mich App 370, 379; 333 NW2d 56 (1983), lv den 418 Mich 926 (1984). In particular, the Department of Public Health and the Insurance Bureau must make their decision "with the advice of the advisory commission." The commission is constituted as follows:

> The health facilities and agencies advisory commission is created in the department. The governor shall appoint the members with the advice and consent of the senate. Half the members shall be consumers and half the members shall be representative of different types of licensees, with at least 1 representative of each type. Membership shall include at last 1 practicing physician, 1 registered nurse, and 1 enrollee of a health main-

tenance organization who is a consumer of health care. The director shall serve as an ex officio member of the advisory commission without vote. [MCL 333.20121; MSA 14.15(20121).]

In summary, § 21042 is not unconstitutionally vague because the statute is as specific as the subject matter requires and the public is protected from arbitrary exercise of the state's discretion by the advisory commission.

II

Plaintiffs next argue that the trial court erred in granting summary disposition against plaintiffs on their claim that defendant was operating in violation of certain statutory provisions, i.e., the Prudent Purchaser Act (PPA), MCL 550.51 *et seq.*; MSA 24.650(51) *et seq.*, the Nonprofit Health Care Corporation Reform Act, MCL 550.1101 *et seq.*; MSA 24.660(101) *et seq.*, and the Insurance Code, MCL 500.100 *et seq.*; MSA 24.1100 *et seq.*

The PPA applies to an organization described as "an insurer, a dental care corporation, hospital service corporation, medical care corporation, health care corporation, or third party administrator." MCL 550.52(j); MSA 24.650(52)(j); MCL 550.53; MSA 24.650(53). Each type of organization is specifically defined in the act, MCL 550.52(b)-(i), (m); MSA 24.650(52)(b)-(i), (m).[1]

---

[1] MCL 550.52(b)-(i), (m); MSA 24.650(52)(b)-(i), (m) provides in pertinent part:

(b) "Dental care corporation" means a dental care corporation incorporated under Act No. 125 of the Public Acts of 1963, being sections 550.351 to 550.373 of the Michigan Compiled Laws.

(c) "Health care corporation" means a health care corporation incorporated under the nonprofit health care corporation reform act, Act No. 350 of the Public Acts of 1980, being sections 550.1101 to 550.1704 of the Michigan Compiled Laws.

* * *

As defendant provides only podiatric services, and does not provide dental care, defendant is clearly not a "dental care corporation," MCL 550.351; MSA 24.650(1). Furthermore, as defendant is organized and operates a for-profit corporation, defendant is not a "health care corporation," defined in the Nonprofit Health Care Corporation Reform Act as a "nonprofit . . . corporation . . . ." MCL 550.1105(2); MSA 24.660(105)(2). Nor is defendant either a "hospital service corporation" or "medical care corporation" since defendant was incorporated after the repeal of the statutes under which these types of entities were formally created. MCL 550.501-550.517; MSA 24.621-24.637 and MCL 550.301-550.316; MSA 24.591-24.606, both repealed by 1980 PA 350, § 703.

Section 106 of the Insurance Code, MCL 500.106; MSA 24.1106, defines an "insurer" as "any . . . corporation . . . engaged or attempting to engage in the business of making insurance contracts or surety contracts." While defendant's health care contracts do provide that defendant will partially reimburse a subscriber for the cost of treatment obtained from a nondesignated podiatrist, we agree with the trial court that this provision does not transform defendant into an "insurer."

---

(g) "Hospital service corporation" means a hospital service corporation incorporated under Act No. 109 of the Public Acts of 1939, being sections 550.501 to 550.517 of the Michigan Compiled Laws.

(h) "Insurer" means an insurer as defined in section 106 of the insurance code of 1956, Act No. 218 of the Public Acts of 1956, being section 500.106 of the Michigan Compiled Laws.

(i) "Medical care corporation" means a medical care corporation incorporated under Act No. 108 of the Public Acts of 1939, being sections 550.301 to 550.316 of the Michigan Compiled Laws.

* * *

(m) "Third party administrator" means an administrator operating under a certificate of authority issued by the commissioner pursuant to the third party administrator act.

To a certain extent, HMOs do have a unique character. Rather than providing health insurance and paying for the bills after the insured has been treated by a doctor, an HMO is a prepaid plan where the participant pays before hand for the services themselves. See Chafetz, *The Federally Qualified Health Maintenance Organization: An Analysis of Federal Legislation Agency Action,* 16 New Eng L Rev 689 (1981). Under traditional definitions, a health maintenance organization does not sell insurance. *New Mexico Life Ins Guarantee Ass'n v Moore,* 93 NM 47; 596 P2d 260 (1979). [*United States Fidelity & Guaranty Co, supra,* p 272.]

As explained in *Moore, supra,* p 50, quoting *Jordan v Group Health Ass'n,* 71 US App DC 38, 46; 107 F2d 239 (1939):

"Although Group Health's activities may be considered in one aspect as creating security against loss from illness or accident, more truly they constitute the quantity purchase of well-rounded, continuous medical service by its members. Group Health is in fact and in function a consumer cooperative. The functions of such an organization are not identical with those of insurance or indemnity companies. The latter are concerned primarily, if not exclusively, with risk . . . . On the other hand, the cooperative is concerned primarily with *getting service rendered* to its members."

The primary service offered by defendant is the provision of podiatric services to subscribers in consideration of prepayment for such services. Defendant is not an insurer as defined in the Insurance Code.

Finally defendant is not a third party administrator as defined in the third party administrator act, MCL 550.901 *et seq.*; MSA 24.901 *et seq.* MCL 550.902(k); MSA 24.902(k) defines a third party

administrator as a person who "processes claims pursuant to a service contract . . . . Third party administrator does not include a carrier or an employer sponsoring a plan." Since the definition of the term "carrier" in MCL 550.902(d)(v); MSA 24.902(d)(v) as a "health maintenance organization regulated under part 210 of the public health code" encompasses defendant, defendant is thus excluded from the definition of "third party administrator."

The trial court correctly found that the Prudent Purchaser Act, the Insurance Code, and the Nonprofit Health Care Corporation Reform Act do not apply to defendant. Further discovery could not have affected the trial court's conclusions. Summary disposition in favor of defendant on plaintiffs' claims of statutory violations was appropriate.

III

Plaintiffs next assert that the trial court erred in concluding that plaintiffs' allegation that defendant had engaged in anticompetitive behavior failed to state a claim upon which relief can be granted. Plaintiffs' allegation was premised on MCL 333.21054(3); MSA 14.15(21054)(3), which provides:

> Prudent purchaser contracts and the rates charged therefore [sic] shall be subject to the same regulatory requirements as health maintenance contracts. The rates charged by an organization for coverage under contracts issued under this section shall not be unreasonably lower than what is necessary to meet the expenses of the organization for providing this coverage and shall not have an anticompetitive effect or result in predatory pricing in relation to prudent purchaser agreement coverages offered by other organizations.

Assuming, arguendo, that the statutory provision creates an implied private right of action, plaintiffs do not fall within the class for whose special benefit the statute was enacted. *Rayford v Detroit,* 132 Mich App 248, 254; 347 NW2d 210 (1984), lv den 419 Mich 938 (1984). That class is composed of "other organizations" offering "prudent purchaser agreements." We agree with the trial court that "organizations" refers to "health maintenance organizations." Since plaintiffs at no time alleged that they were a "health maintenance organization," let alone a health maintenance organization offering a prudent purchaser agreement, plaintiffs lacked standing to assert a private cause of action based on § 21504.

IV

Plaintiffs next argue that the trial court erred in summarily dismissing their claim of tortious interference with an advantageous business relationship.

To establish a prima facie case of tortious interference with a business relationship, plaintiffs must show: (1) the existence of a valid business relation (not necessarily evidenced by an enforceable contract) or expectancy; (2) knowledge of the relationship or expectancy on the part of the defendant interferer; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *Trepel v Pontiac Osteopathic Hospital,* 135 Mich App 361, 374; 354 NW2d 341 (1984), lv den 422 Mich 853 (1985). In *Formall, Inc v Community Nat'l Bank of Pontiac,* 166 Mich App 772, 777-781; 421 NW2d 289 (1988), this Court further explained the third element:

"[O]ne who alleges tortious interference with a contractual or business relationship must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another." [*Feldman v Green,* 138 Mich App 360, 378; 360 NW2d 881 (1984), lv den 422 Mich 961 (1985).]

See also *Christener v Anderson, Nietzke & Co, PC,* 156 Mich App 330, 348; 401 NW2d 641 (1986); *Trepel v Pontiac Osteopathic Hospital,* 135 Mich App 361, 376-377; 354 NW2d 341 (1984), lv den 422 Mich 853 (1985). The *Feldman* panel also stated that a plaintiff must demonstrate, with specificity, affirmative acts by the interferer which corroborate the unlawful purpose of the interference. *Feldman, supra,* pp 369-370.

In *Trepel, supra,* a panel of this Court reviewed a claim for tortious interference with contractual relations and endorsed the approach taken by *Weitting v McFeeters,* 104 Mich App 188, 197; 304 NW2d 525 (1981). The *Weitting* Court, relying on 4 Restatement Torts, 2d, § 766B, stated that the interference with a business relationship must be improper in addition to being intentional. Improper means illegal, unethical, or fraudulent. 104 Mich App 198; *Trepel, supra,* p 374.

The Court declined to find the defendant bank's actions "per se wrongful" where the defendant was motivated by legitimate personal and business reasons. *Formall, supra,* p 780.

We agree with the trial court that plaintiffs' complaint is legally insufficient to sustain a claim for tortious interference with a business relationship. The only conduct denominated as illegal in plaintiffs' complaint is contained in the allegations pertaining to statutory violations and action taken pursuant to unconstitutional delegation of legislative authority. Our prior conclusion that these claims of "illegal" activity are not sustainable

compels a conclusion that plaintiffs will be unable to establish either that defendant's conduct was wrongful per se or undertaken illegally and without justification.

V

Plaintiffs finally argue that the trial court erred by dismissing their request for declaratory judgment. The existence of an "actual controversy" is a condition precedent to invocation of declaratory relief. *Shavers v Attorney General*, 402 Mich 554, 588; 267 NW2d 72 (1978). Here, the only bases alleged for plaintiffs' asserted right to declaratory relief were defendant's alleged unconstitutional actions, statutory violations, and tortious conduct. Dismissal on the merits of these various claims made moot any claim to declaratory relief; an "actual controversy" no longer exists upon which to grant declaratory relief.

Accordingly, we affirm the order awarding summary disposition to defendant.

Affirmed.