**DXS, INC., Plaintiff,**

v.

**SIEMENS MEDICAL SYSTEMS, INC., Defendant.**

**No. 91–77203.**

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 15, 1997.

Neill T. Peters, Kohl, Harris, Metamora, MI, for Plaintiff.

Barbara E. Biagas, Coudert Brothers, San Francisco, CA, for Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

EDMUNDS, District Judge.

This matter comes before the Court on Defendant's February 28, 1997, motion for summary judgment. Plaintiff filed a timely response, and Defendant filed a reply. Oral argument was heard on June 25, 1997. For the reasons stated below, this Court grants Defendant's motion for summary judgment on all antitrust claims. Defendant's motion for summary judgment is denied in part as to the remaining tortious interference with contract claim for Saginaw General Hospital.

### I. Facts

The relevant facts in this matter were set forth succinctly by the Court of Appeals in *DXS, Inc. v. Siemens Medical Systems, Inc.*, 100 F.3d 462, 465–66 (6th Cir.1996), and need not be repeated here. On appeal, the Sixth Circuit affirmed this Court in part, reversed in part, and remanded the case. This Court erred in finding that Plaintiff's antitrust claims were barred by the statute of limitations. *Id.* at 467. The panel held that statements that Siemens allegedly made to DRA, St. Luke's, and Saginaw constituted overt acts that restarted the statute of limitations. *Id.* The panel also reversed this Court's decision granting Siemens judgment as a matter

of law on DXS's claim of tortious interference with Saginaw.[1] *Id.* at 471–73. This Court had found that there was insufficient evidence from which a reasonable juror could find that the alleged tortious interference occurred during the statutory limitations period. However, the Sixth Circuit held that the testimony of Gilbert Decker was sufficient to allow a jury to find that the alleged interference occurred within the appropriate period. *Id.* at 472. The panel also held that this Court erred when it determined that DXS had failed to adduce adequate evidence of damages and when it did not allow evidence on lost part sales. *Id.* at 474–75.[2]

Therefore, the Sixth Circuit remanded the following claims for further consideration:

(1) DXS's claims of illegal tying and violations of Section 2 of the Sherman Act;

(2) DXS's parallel claims under the Michigan Anti-trust Reform Act; and

(3) DXS's claim of tortious interference against Saginaw General Hospital.

Following the remand from the Court of Appeals, Siemens filed the present motion for summary judgment on these remaining claims.

## II. Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v.*

*Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Celotex,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Liberty Lobby,* 477 U.S. at 252.

The court must believe the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Liberty Lobby,* 477 U.S. at 255. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *Liberty Lobby,* 477 U.S. at 255.

## III. Analysis

### A. Law of the Case Doctrine

Because this case was remanded from the Sixth Circuit, this Court must "proceed in accordance with the mandate and law of the case as established by the appellate court." *Hanover Ins. Co. v. American Engineering Co.,* 105 F.3d 306, 312 (6th Cir.1997) (quoting *Petition of U.S. Steel Corp.,* 479 F.2d 489, 493 (6th Cir.), *cert. denied,* 414 U.S. 859, 94 S.Ct. 71, 38 L.Ed.2d 110 (1973)). The Supreme Court's interpretation of the doctrine is that "when a court decides upon a rule of law, that decision should continue to govern the same issue in subsequent stages in the same case." *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983). The doctrine protects parties from having to re-litigate issues decided in prior stages and assures that inferior courts obey the law established by superior courts.

---

1. The court affirmed this Court's decision granting judgment as a matter of law to Siemens on the tortious interference claims as to St. Luke's and DRA because Plaintiff failed to prove causation. *Id.* at 470.

2. This error was harmless as to DXS's claims for DRA and St. Luke's due to DXS's failure to prove causation.

*NAACP v. Detroit Police Officers Ass'n.*, 676 F.Supp. 790, 791 (E.D.Mich.1988).

 This doctrine, however, is not an "inexorable command." *Hanover*, 105 F.3d at 312. Courts may reconsider a ruling where there is substantially different evidence, new law is decided by a superior court, or where the decision is clearly erroneous and following it would result in manifest injustice. *Id.* Further, the law of the case doctrine only binds a lower court on "those questions necessarily decided in the earlier appeal." *Id.* If a question was not necessarily decided on appeal, then any statement regarding it is dicta that is not binding on the lower court. *Id.* at 312–13 (Sixth Circuit's comment in previous appeal on question that was not before the court did not bind lower court).

 One of Plaintiff's contentions is that Defendant's motion for summary judgment should be denied on the antitrust claims because the Sixth Circuit explicitly held that Siemens' acts constituted a continuing antitrust violation. This Court finds that the Plaintiff is reading the Sixth Circuit's opinion too broadly. On appeal, the Sixth Circuit considered whether this Court erred by determining that Plaintiff's antitrust claims were barred by the four year statute of limitations. In determining this issue, the appellate panel drew all inferences in Plaintiff's favor and found that Defendant's statements to DRA, St. Luke's, and Saginaw were overt acts that accrued a new cause of action. The Sixth Circuit was not considering whether the Plaintiff had provided sufficient evidence to survive summary judgment on the substantive elements of its tying claim. Its statement that "[i]n our view, Siemens's statements to DRA, St. Luke's, and Saginaw constituted a continuing antitrust violation," *DXS*, 100 F.3d at 467, was not intended to foreclose this Court from considering whether or not Plaintiff can avoid summary judgment on the substance of its antitrust allegations. That question was not before the Court of Appeals, and therefore, Plaintiff's reliance on the statement above mistakes and

misapplies the context in which it was written.

**B. Tying Claim**

 "A tying arrangement is 'an agreement by a party to sell one product but only on the condition that the buyer also purchase a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier.'" *Eastman Kodak v. Image Technical Servs.*, 504 U.S. 451, 461, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992) (quoting *Northern Pacific R. Co. v. United States*, 356 U.S. 1, 5–6, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958)). A tying arrangement violates the Sherman Act, 15 U.S.C. § 1 (1994),[3] if "the seller has appreciable economic power in the tying product market and if the arrangement affects a substantial volume of commerce in the tied market." *Eastman Kodak*, 504 U.S. at 462; *Fortner Enterprises, Inc. v. United States*, 394 U.S. 495, 503, 89 S.Ct. 1252, 22 L.Ed.2d 495 (1969).

 A plaintiff proves that a tying arrangement is per se unlawful if he establishes that (1) two separate products are involved; (2) the sale of one product is conditioned on the purchase of another; (3) the seller has sufficient economic power in the market for the tying product to enable it to restrain trade in the market for the tied product; and (4) a substantial amount of interstate commerce in the tied product is affected. *3 P.M., Inc. v. Basic Four Corp.*, 591 F.Supp. 1350, 1355–56 (E.D.Mich.1984). In the Sixth Circuit, a plaintiff must also show that the tying arrangement resulted in the actual foreclosure of competition in the tied market. *Hand v. Central Transp., Inc.*, 779 F.2d 8, 11 (6th Cir.1985).

> [T]he essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms.

---

3. Section 1 of the Sherman Act states in relevant part that "[e]very contract, combination, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde,* 466 U.S. 2, 12, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984).

For Plaintiff to succeed in proving its tying claim, "a reasonable trier of fact must be able to find, first, that [there] are two distinct products, and, second, that [Defendant] has tied the sale of the two products." *Eastman Kodak,* 504 U.S. at 462. There must be two distinguishable product markets involved. *Jefferson Parish,* 466 U.S. at 21. "[N]o tying arrangement can exist unless there is a sufficient demand for the purchase of the [tied product] separate from [the tying product] to identify a distinct product market in which it is efficient to offer [the tied product] separate from [the tying product.]" *Id.* at 21–22; *see also PSI Repair Servs., Inc. v. Honeywell, Inc.,* 104 F.3d 811, 815 (6th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 2434, 138 L.Ed.2d 195 (1997).

Plaintiff claims that the tying product is "parts with warranties," and the tied product is "service." By defining the relevant products in this manner, the Plaintiff has satisfied the first element. The evidence shows that there are two distinct markets because separate demand for parts and service exists. Before the actions occurred that gave rise to this lawsuit, Siemens sold its parts, and DXS sold its service. This demonstrates that the parts and service markets were and are separate. Further, by defining the tying and tied products in this manner, Plaintiff can argue that this case is analogous to *Eastman Kodak,* where the Supreme Court found that service and parts were distinct products in a tying case.

Plaintiff has failed to prove the second necessary element of a tying claim because the evidence does not establish that the two products were ever tied. It is undisputed that the parts were readily available without the purchase of service. Siemens continued to sell its parts to its authorized dealers and directly to customers regardless of whether they purchased service. As the Sixth Circuit noted, after Siemens notified DXS of the new policy, "DXS developed alternative sources for Siemens's parts...." *DXS,* 100 F.3d at 465.[4] Because parts were readily available without purchasing service, Plaintiff cannot succeed in proving its tying claim. Plaintiff conceded in its brief that "Siemens has never actually refused to sell parts to DXS...." Response brief at 24. Plaintiff's claim based on tying of warranted parts and service cannot succeed because Defendant never required parts and service to be purchased together. Defendant's motion for summary judgment on Plaintiff's tying claim, therefore, is granted.

## C. Monopolization Claim

Plaintiff also charges that Siemens violated § 2 of the Sherman Act. This section states:

[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $10,000,000 if a corporation, or, if any other person, $350,000, or by imprisonment not exceeding three years, or by both said punishments, in the discretion of the court.

15 U.S.C. § 2 (1994). "The offense of monopoly under § 2 of the Sherman Act has two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition of maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Eastman Kodak,* 504 U.S. at 479–80; *see also PSI,* 104 F.3d at 821.

For purposes of this motion, Defendant conceded that the first element of this test is satisfied. It contends, however, that Plaintiff has not proven sufficient evidence on

---

**4.** Had the Defendant actually implemented its policy at the time it was announced, Plaintiff's claim would be barred by the statute of limitations. Plaintiff has taken the position that the policy was not implemented at that time. No evidence has been provided to this Court that indicates that the policy was ever implemented and that customers were required to purchase parts and service together.

the second element. The Supreme Court described the second element as "the use of monopoly power 'to foreclose competition, to gain a competitive advantage, or to destroy a competitor.'" *Eastman Kodak,* 504 U.S. at 482–83 (quoting *United States v. Griffith,* 334 U.S. 100, 107, 68 S.Ct. 941, 92 L.Ed. 1236 (1948)). If Siemens's policy constituted "exclusionary action" taken "as part of a scheme of willful acquisition or maintenance of monopoly power, it will have violated § 2." *See Eastman Kodak,* 504 U.S. at 483.

The exclusionary action on which Plaintiff bases its claim is the alleged tying of parts and service. As noted above, however, those actions did not constitute illegal tying. "[O]ther than notifying DXS of its new policies, Siemens took no action to implement the new policies. Instead, it continued to sell parts to third parties and to warranty equipment installed by third parties." *DXS,* 100 F.3d at 465. Based on the evidence that Plaintiff has presented, no reasonable juror could find that Siemens used its market power to foreclose competition or increase its market power.

■ Moreover, the antitrust laws were not designed to protect DXS from the type of injury that it alleges it has suffered. Antitrust standing requires an injury to competition, not just to a competitor. *HyPoint Tech. v. Hewlett–Packard Co.,* 949 F.2d 874, 877–78 (6th Cir.1991), *cert. denied,* 503 U.S. 938, 112 S.Ct. 1480, 117 L.Ed.2d 623 (1992). "The injury should reflect the anticompetitive effect either of the [antitrust] violation or of anticompetitive acts made possible by the violation." *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977). DXS has not proven that Siemens took any actions that harmed competition. Accordingly, this Court grants Defendant's motion for summary judgment on the monopolization claim.

### D. Michigan Antitrust Act Claim

■ Plaintiff also raises claims under the Michigan Antitrust Reform Act, Mich.Comp. Laws Ann. §§ 445.771 to 445.788 (West 1989). Courts examining claims under this Act apply the same legal analysis as courts examining analogous claims under the Sherman Act. *See* Mich.Comp.Laws Ann. § 445.784(2) ("It is the intent of the legislature that in construing all sections of this act, the courts shall give due deference to interpretations given by the federal courts to comparable antitrust statutes....") For the reasons stated above in the analysis of Plaintiff's federal antitrust claims, Defendant's motion for summary judgment is granted on Plaintiff's state antitrust claims.

### E. Tortious Interference with Contract

■ "To establish a prima facie case of tortious interference with a business relationship, a plaintiff must show (1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) an intentional or improper interference with the relationship that induces or causes a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted." *DXS,* 100 F.3d at 469 (citing *Michigan Podiatric Medical Ass'n v. National Foot Care Program, Inc.,* 175 Mich. App. 723, 438 N.W.2d 349, 354 (1989)). Following trial, this Court found that Defendant was entitled to judgment as a matter of law on Plaintiff's claim of tortious interference as to Saginaw because there was insufficient evidence to find any resultant damage and the claim was barred by the statute of limitations. The Sixth Circuit reversed and remanded these findings.

■ This Court denies Defendant's motion for summary judgment on the tortious interference claim as to Saginaw because there is sufficient evidence from which a reasonable juror could find in favor of the Plaintiff. Saginaw's administrator, Gilbert Decker, testified that there was a business relationship between Saginaw and DXS, satisfying the first element. Decker also testified that he held conversations with Siemens's representative Daniel Staszak regarding Saginaw's relationship with DXS, providing evidence that the second element is satisfied.

Siemens argues that it is entitled to summary judgment because Plaintiff has failed to

prove causation. According to the Sixth Circuit, "Decker testified that he had two conversations with Staszak (of Siemens) within a three-week period in which Staszak told him that DXS could not service Siemens's equipment any longer because Siemens would no longer sell parts to DXS. According to Decker, Saginaw began using Siemens to service its equipment shortly after the second conversation." *DXS*, 100 F.3d at 471. The fact that these conversations with alleged misrepresentations occurred so close in time to Saginaw switching from DXS to Siemens for service might permit a reasonable juror to find that these statements were the cause of the breach of the relationship between Saginaw and Siemens. Therefore, the Court finds that Plaintiff has presented a genuine issue of material fact sufficient to avoid summary judgment on this issue.

Finally, Defendant argues that the Plaintiff's theory of damages for its tortious interference claim must fail. The Sixth Circuit, however, found that Siemens was not entitled to judgment on this basis, and that this Court erred by excluding evidence related to the Plaintiff's theory of damages. *DXS*, 100 F.3d at 473–75. Siemens is making the same argument here as was made at the Sixth Circuit. Given that court's refusal to award judgment for Siemens on the basis of Plaintiff's inadequate theory of damages, this Court cannot grant Siemens' motion for summary judgment on the same issue. Plaintiff must be permitted to put in its proofs at trial and to have judgment rendered on the basis of those proofs.

## IV. Conclusion

For the reasons stated above, this Court hereby GRANTS Defendant's motion for summary judgment on all antitrust claims. Defendant's motion for summary judgment is DENIED IN PART as to the remaining tortious interference with contract claim for Saginaw General Hospital.

SO ORDERED.