**McKESSON MEDICAL—SURGICAL, INC., a Virginia Corporation, Plaintiff,**

v.

**MICRO BIO–MEDICS, INC., d/b/a Caligor Great Lakes, a New York Corporation, David Bowman, and Ruth Bowman, Defendants.**

No. 02–CV–72626–DT.

United States District Court, E.D. Michigan, Southern Division.

May 16, 2003.

Leland D. Barringer, Richard A. Gaffin, Jonathon W. Fountain, Miller Canfield, Detroit, for plaintiff.

William D. Sargent, Cameron J. Evans, Robert J. Muchnick, Honigman Miller, Detroit, for defendant.

## OPINION

DUGGAN, District Judge.

Plaintiff, McKesson Medical–Surgical, Inc., (McKesson), filed its Complaint in this Court on June 24, 2002, and its First Amended Complaint (Complaint), on January 14, 2003. McKesson's claims arise out of David and Ruth Bowman (collectively the Bowmans) leaving McKesson's employ as sales representatives and joining Micro Bio–Medics, Inc., d/b/a/ Caligor Great Lakes (Caligor), one of McKesson's competitors in the field of medical supplies, as sales representatives. In its Complaint, McKesson asserts the following claims: 1) Action for Misappropriation of Trade Secrets Against the Bowmans, 2) Action for Misappropriation of Trade Secrets against Caligor, 3) Action for Interference with Business Relationships Against the Bowmans, 4) Action for Interference with Business Relationships Against Caligor, 5) Action for Lanham Act Violations Against the

Bowmans, 6) Action for Lanham Act Violations against Caligor, 7) Action for Breach of the Duty of Loyalty Against the Bowmans, and 8) Action for Civil Conspiracy Against all Defendants.

The matter is currently before the Court on Defendants' Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment on Damages. McKesson has filed a response to this Motion. A hearing was held on the matter on April 17, 2003.

### STANDARD

Summary judgment is proper only if there is no genuine issue as to any material fact, thereby entitling the moving party to judgment as a matter of law. *Hunter v. Caliber Sys., Inc.,* 220 F.3d 702, 709 (6th Cir.2000); *see also* FED. R. CIV. P. 56(c). There is no genuine issue of material fact for trial unless, by viewing the evidence in a light most favorable to the nonmoving party, a reasonable jury could "return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). On a motion for summary judgment, the moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a material issue of fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to show that there is a genuine issue for trial. FED. R. CIV. P. 56(e); *Celotex,* 106 S.Ct. at 2552–53. The nonmoving party must do more than show that there is some metaphysical doubt as to the material facts. *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 800 (6th Cir.1994). The nonmoving party must present significant probative evidence in support of its opposition to the motion for summary judgment. *Moore v. Philip Morris Cos., Inc.,* 8 F.3d 335, 339–40 (6th Cir.1993).

### BACKGROUND

McKesson is in the business of distributing medical supplies to physicians. McKesson operates by employing sales representatives who solicit sales from physicians. David and Ruth Bowman were employed as sales representatives by McKesson until May, 2002. In May, 2002, David and Ruth Bowman resigned as sales representatives for McKesson and joined Caligor, a McKesson competitor, as sales representatives.

As Caligor sales representatives, David and Ruth Bowman solicited sales in the same general geographic area as they had for McKesson. Neither David nor Ruth Bowman had signed any "non-compete" agreements with McKesson. A short time before leaving McKesson, David Bowman, with help from his son-in-law, prepared a list of his and Ruth Bowman's customers at McKesson. This list was then sent to Walter Jachimek, David and Ruth's eventual boss at Caligor. Caligor then sent letters out to physicians on that list introducing David and Ruth Bowman as Caligor sales representatives. Both David and Ruth Bowman have since had some success selling Caligor products to their former McKesson customers and other McKesson customers.

The dispute in this case arises from David and Ruth Bowman's alleged use of information received during their employment with McKesson in their current employment with Caligor. The facts pertinent to the information at issue is discussed below in discussion of Defendants' Motion.

## DISCUSSION

Defendants move for summary judgment on all of McKesson's claims. In the alternative, Defendants seeks partial summary judgment on the damages issue relating to McKesson's Interference with Business Relationships claim. Defendants' Motion regarding each separate claim is discussed below.

### I. *Misappropriation of Trade Secrets:*

■ McKesson asserts Misappropriation of Trade Secrets claims against David and Ruth Bowman as well as Caligor, pursuant to the Michigan Uniform Trade Secrets Act (MUTSA or the MUTSA), M.C.L. § 445.1901, *et seq.* Under the MUTSA, a claim for misappropriation of trade secrets entails the following:

(i) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means.

(ii) Disclosure or use of a trade secret of another without express or implied consent by a person who did 1 or more of the following:

(A) Used improper means to acquire knowledge of the trade secret.

(B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was derived from or through a person who had utilized improper means to acquire it, acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or derived from or through a person who owed a duty to the person to maintain its secrecy or limit its use.

(C) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

M.C.L. § 445.1902(b). A trade secret, under the MUTSA, is defined as

information, including a formula, pattern, compilation, program, device, method, technique, or process, that is both of the following:

(i) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

(ii) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

M.C.L. § 445.1902(d).

In its brief in opposition to Defendants' Motion for Summary Judgment, Plaintiff "identifies" its claim that Plaintiff misappropriated trade secrets as:

This case is about much more than pricing. It is about protecting the substantial investment McKesson has made over the years in identifying the customers willing to buy its products from the hundreds of prospective customers who purchase medical and surgical supplies. It is also about protecting McKesson's investment in developing and maintaining customer relationships through its sales representatives. The identity of these customers and the maintenance of these relationships are the backbone of McKesson's business. These relationships are based on the highly specialized knowledge that each McKesson sales representative develops about each customer's business and peculiar needs.

(Pl.'s Resp. Br. at 1). In this Court's opinion, this is the essence of Plaintiff's claim, *i.e.*, the identity of customers and the "knowledge that each McKesson sales representative develops about each customer's business and peculiar needs." (*Id.*). In this case, the names of these customers, *i.e.*, their identity, was devel-

oped by the Bowmans and the "needs" of the customer were, as McKesson states, also "developed by the representative." For the reasons set forth herein, this type of information is not protectable as a trade secret.

Defendants contend this case is not about trade secrets, but rather about McKesson challenging "sales representatives' right to work for an employer of their own choosing when they do not have non-competition or non-solicitation agreements." (Defs.' Br. at 9). First, Defendants contend the Bowmans have a right to change jobs, citing, in support, *Hayes–Albion v. Kuberski*, 421 Mich. 170, 364 N.W.2d 609 (1984).

In *Hayes–Albion*, the Court stated, "[i]n general, there is nothing improper in an employee establishing his own business and communicating with customers for whom he had formerly done work in his previous employment." *Id.* at 183, 364 N.W.2d 609. Furthermore, the court found customers had a right to choose with whom to deal, and that a former employee's use of information regarding a client's needs is actionable for money damages when such action is "in violation of an agreement respecting the employee providing services to the customer after termination of employment . . . ." *Id.* at 184, 364 N.W.2d 609.

Even though no such agreement exists in the case at bar, McKesson seeks to protect information regarding the Bowmans' customers which the Bowmans obtained while they were at McKesson. In this Court's opinion, such protection may only be available to the extent the information McKesson seeks to protect is trade secret information.

Defendants further contend that McKesson's claim fails because "there is no evidence that the Bowmans have used any information relating to McKesson other than that which, consistent with industry standard and McKesson's own business practices, they received from the customers after their employment with McKesson ended." (Defs.' Br. at 18).

In response, McKesson points to a list of customers compiled by David Bowman and the fact that the Bowmans targeted McKesson sales representative, Rick Cardoze's, largest accounts. The list compiled by David Bowman does not support McKesson's claim for misappropriation. David Bowman testified at his deposition that this list was compiled from "phone books, there were lists that I kept for mailings to my customers, thank you cards that I have done throughout my career with all these companies, there were hospital directories, things of that nature." (Defs.' Deposition Exs. D. Bowman at 66). McKesson has not provided any evidence to refute this testimony. As the testimony indicates, the list at issue was not a list McKesson kept itself, nor was it compiled from any McKesson "trade secret" source; rather, it was compiled from personal and public sources available to David Bowman. As such, this list and its use cannot support McKesson's claim for misappropriation of its "trade secrets" listed above.

McKesson's second assertion is based upon the Bowmans "targeting" Rick Cardoze's largest accounts. To support its claim that this activity provides support for its misappropriation claim, McKesson cites to a declaration by Lawrence Hohs (Hohs), Primary Care District Sales Manager for McKesson, in which Hohs states that

Absent this [McKesson trade secret] information, Caligor would not have been immediately successful making sales calls. There are hundreds of potential customers within the Bowman's territories. Without using information the Bowmans possessed, Caligor would not

have known which customers in the Bowmans' territories were willing to buy. Rather, it would have first had to develop a list of customers to call on by purchasing customer lists, by making "cold calls", by purchasing advertising time, or by sending mailers.

(Hohs Decl. at ¶ 10). In this Court's opinion, this does not establish that Defendants actually misappropriated McKesson's "trade secrets." While Bowmans may have used the lists of customers which the Bowmans compiled, for the reasons set forth in this Opinion, such lists do not constitute "trade secrets." Therefore, the use of such lists does not constitute misappropriation of trade secrets.

At the Hearing held on this matter, McKesson cited *Hayes–Albion* and *Electronic Planroom v. McGraw–Hill Cos.*, 135 F.Supp.2d 805, 821 (E.D.Mich.2001), as support for its argument that the customer list compiled by David Bowman is a protectable trade secret. McKesson also cited these two cases as support for its contention that its misappropriation claim in the case at bar is a valid claim. Neither of these cases supports McKesson's contention.[1]

In *Hayes–Albion*, the plaintiff sought to protect the identity of its customers as a trade secret. The court first noted that the defendant had not stolen "a list of customers that plaintiff had kept secret[;]" rather, because the defendant had "significant customer contact while employed with plaintiff ... he kept the names and addresses of customers in a personal memo book ...." *Hayes–Albion*, 421 Mich. at 183, 364 N.W.2d 609. The court then stated that "[i]n general, there is nothing improper in an employee establishing his own business and communicating with customers for whom he had formerly done work in his previous employment." *Id.*

The court also noted that through his position, the plaintiff had "learned about the peculiar needs of particular clients[,]" something that McKesson seeks to protect in the case at bar. *Id.* The court stated that "such information is not a trade secret at common law." *Id.* at 183–84, 364 N.W.2d 609. The court then recognized that such information is protectable, and the plaintiff is entitled to money damages when a former employee's use of information regarding client needs violates "an agreement respecting the employee providing services to the customer after the termination of employment ...." *Id.* at 184, 364 N.W.2d 609.

In sum, the Michigan Supreme Court held in *Hayes–Albion* that customer lists compiled by the employee through the em-

---

**1.** After the hearing, McKesson sent a "letter" to this Court listing fifteen cases from various courts regarding customer lists and trade secret claims. In this letter, McKesson asserts that "[g]iven the substantial amount of authority indicating that customer lists containing information not readily ascertainable and accumulated at great effort and expense are trade secrets under the Uniform Trade Secrets Act of several states ... McKesson contends that a genuine issue of material fact exists as to whether its customer list is a trade secret." (4/23/03 Letter from McKesson's Counsel to this Court). McKesson's contention and reliance on these cases fail for the simple fact that the list at issue in the case at bar was not McKesson's list, but rather a list compiled by David Bowman, and, accordingly, McKesson did not "accumulate[ ] [the list at issue] at great effort and expense ...." (*Id.*). Furthermore, the only possibly controlling authority cited in McKesson's Letter is a Sixth Circuit case applying Ohio law that involved defendants taking plaintiff's customer books and customer service materials. *See W.R. Grace & Co. v. Hargadine, et al.*, 17 Ohio Misc. 199, 392 F.2d 9 (6th Cir.1968). Therefore, *Hargadine* is distinguishable from the case at bar. McKesson's Letter and the cases cited therein do not support McKesson's claims in the case at bar.

ployee's customer contact while employed with the plaintiff-employer do not constitute "trade secrets." The Court further held, however, that, "an employer may have a protectable interest in information about client needs that an employee gains by virtue of his employment." *Id.* But "that the remedy for the use of information about a client's needs *in violation of an agreement* respecting the employee providing services to the customer after termination of employment, is money damages." *Id.*(emphasis added). The customer list in the case at bar was not "a list of customers that [McKesson] had kept secret," and there is no agreement between the Bowmans and McKesson regarding use of customer needs information after the Bowmans left McKesson's employ. Therefore, *Hayes–Albion* does not support McKesson's claims in the case at bar.[2]

In *Electronic Planroom,* the plaintiff had instructed the defendant to compile a "customer leads" database that included not just a list of the customers' names and addresses, but other pertinent information as well. The defendant in *Electronic Planroom* had also taken several other "types of information" with him when he left the plaintiff's employ. The *Electronic Planroom* Court interpreted *Hayes–Albion* as standing for the proposition that a customer list can be protected when a plaintiff employer "through its employee agents, has obtained and used the information in question in an effort to gain 'an advantage over competitors who do not know or use it.'" *Electronic Planroom,* 135 F.Supp.2d at 819 (quoting *Hayes–Al-*

*bion,* 421 Mich. at 181, 364 N.W.2d 609). The court then acknowledged that the *Hayes–Albion* Court had made a distinction between a list of names and addresses and information regarding clients' needs. Based on this distinction, and the fact that the database in question contained information other than just names and addresses, the court held that an issue of fact remained as to whether the customer leads database was a trade secret. *Electronic Planroom,* 135 F.Supp.2d at 818.

This Court disagrees with the *Electronic Planroom* Court's reliance on the mere distinction made by the *Hayes–Albion* Court regarding lists of customer names and addresses and information regarding customers' needs. As discussed above, the *Hayes–Albion* Court stated that even information regarding customers' needs did not constitute a trade secret; rather, a plaintiff could protect such information through an agreement with its employee regarding the use of such information after termination of the employment relationship. *Hayes–Albion,* 421 Mich. at 183–84, 364 N.W.2d 609.

In this Court's opinion, customer lists developed by the employee are not protectable "trade secrets." To the extent that the list of customers accumulated by the employee includes "needs of customers" as learned by employee during the course of his employment, such information is not protectable as a "trade secret." It is, however, protectable under an agreement in which the employee agrees not to

---

**2.** In its brief opposing Defendants' Motion for Summary Judgment, Plaintiff, citing *Hayes–Albion,* states, "[t]he court then determined that damages were the appropriate remedy rather than injunctive relief. Thus, notwithstanding the fact that the court said that information about a client's peculiar needs is not a trade secret at common law, it nevertheless held that Hayes–Albion was entitled to money

damages.'' (Pl.'s Resp. Br. at 9) (citation and emphasis omitted). What Plaintiff failed to advise the Court is that in *Hayes–Albion* there was an *agreement* in which the employee agreed not to use or disclose this information. It was because of this *agreement* that the *Hayes–Albion* Court indicated that, even though injunctive relief would not be permitted, damages were available.

disclose such information. *See Hayes–Albion.*

To hold otherwise, would subject every former employee who elects to call· on customers he previously called upon with the former employer to a lawsuit for "trade secret" violation because it is likely, in all those situations that, the former employee would be aware of the needs of these customers which he/she learned about during employment with the previous employer. To allow McKesson to prevail on its trade secrets claim in the case at bar would essentially interpret the MUTSA to be a blanket, statutorily created non-compete agreement between sales people and their former employers. This would not serve the purpose of trade secrets law. See *Fleming Sales Co., Inc. v. Bailey,* 611 F.Supp. 507, 514 (N.D.Ill.1985), (stating that allowing a similar claim would "not strike a proper balance between the purposes of trade secrets law and the strong policy in favor of fair and vigorous business competition").

If an employer wishes to restrict an employee's use of such information after the employment relationship is terminated, the employer must do it with an appropriate non-competition agreement.

For the reasons set forth above, Defendants' Motion for Summary Judgment with respect to Plaintiff's claims of misappropriation of trade secrets shall be granted.

### *Defendants' Request for Attorneys Fees:*

■ Defendants also request attorneys fees pursuant to M.C.L. § 445.1905, which provides "[i]f a claim of misappropriation is made in bad faith, a motion to terminate an injunction is made or resisted in bad faith, or willful and malicious misappropriation exists, the court may award reasonable attorney's fees to the prevailing party." Defendants state: ·

(1) McKesson's own internal records indicate that the Bowmans returned all confidential information; (2) McKesson cannot establish the existence of any trade secrets; (3) McKesson did not protect the secrecy of its information, including by disclosing it to customers without restriction; (4) McKesson cannot establish improper acquisition, use and/or disclosure; (4)[sic] McKesson obtains and uses its competitors' information and hires its competitors sales representatives, and (5) McKesson has selectively sued the Bowmans, and not other departing sales representatives, who likewise joined Caligor and other competitors.

(Defs.' Br. at 19). In support, Defendants cite *Contract Materials Processing v. Kataleuna GmbH,* 222 F.Supp.2d 733 (D.Md.2002)(*Contract Materials*). In *Contract Materials,* the court, applying Maryland's version of the Uniform Trade Secrets Act, stated that "in order to succeed on a request for attorney's fees under the [UTSA], there must be 'clear evidence that the action [was] *entirely* without color and taken for other improper purposes amounting to bad ·faith.' " *Id.* at 744 (citation omitted; emphasis added). Defendants have failed to persuade this Court that there exists "clear evidence" that this action was entirely without color and taken for improper purposes amounting to bad faith. Therefore, Defendants' request for attorneys fees shall be denied.

### II. *Interference with Business Relationship:*

■ McKesson asserts claims of "interference with Business Relationships" against both the Bowmans and Caligor, in Counts III and IV of its Complaint. To establish its claim, McKesson

must show: (1) the existence of a valid business relation (not necessarily evidenced by an enforceable contract) or

expectancy; (2) knowledge of the relationship or expectancy on the part of the defendant interferer; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *Michigan Podiatric Medical Ass'n v. National Foot Care Program, Inc.*, 175 Mich. App. 723, 735, 438 N.W.2d 349 (1989) (citations omitted). McKesson must also "allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another." *Id.* at 736, 438 N.W.2d 349 (citation omitted). McKesson "must demonstrate, with specificity, affirmative acts by [Defendants] which corroborate the unlawful purpose of the interference." *Id.* In addition to being intentional, the Defendants' acts must also be improper, meaning "illegal, unethical, or fraudulent." *Id.* An act is per se wrongful if the act "is inherently wrong or one that is never justified under any circumstances." *Formall v. Community Nat'l Bank*, 166 Mich.App. 772, 780, 421 N.W.2d 289 (1988).

■ Defendants contend that there is no evidence that they engaged in any per se wrongful acts, and that "[t]here is nothing malicious, unjustified, or improper in the Bowmans changing jobs and soliciting, on Caligor's behalf, some of the customers they serviced on behalf of McKesson." (Defs.' Br. at 20). Therefore, Defendants assert, they are entitled to summary judgment on McKesson's Interference claims. The Court agrees.

In response, McKesson argues Defendants' actions were per se wrongful or "malicious, unjustified in law, and for the specific purpose of invading McKesson's business." (Pl.'s Resp. Br. at 25). McKesson's per se wrongful argument fails because it is based on Defendants misappropriating McKesson's trade secrets, for which this Court finds McKesson has provided no supporting evidence.

McKesson's argument that Defendants' actions were "malicious, unjustified in law, and for the specific purpose of invading McKesson's business" is based upon David and Ruth Bowman testifying that they intended to compete with McKesson upon joining Caligor, and Caligor representatives testifying that Caligor had no face-to-face salespeople in Michigan until it hired the Bowmans, which, according to McKesson shows Defendants' unlawful purpose. The Court is not persuaded by these arguments. To hold that Defendants' actions in the case at bar were malicious and unjustified in law would be to hold that competition in businesses like those involved here is malicious and unjustified in law. McKesson has not provided any legal support for finding Defendants' actions to be malicious and unjustified in law. Such a conclusion would lead to intentional interference claims against any salespeople who solicited McKesson customers. Therefore, Defendants' Motion shall be granted as to McKesson's Interference with Business Relations claims.[3]

### III. *Lanham Act:*

■ McKesson's Lanham Act claims, in Counts V and VI, are brought under 15 U.S.C. § 1125. Section 1125 provides:

> Any person who, on or in connection with any goods or services, or any container for goods, *uses in commerce any*

---

**3.** Because the Court shall grant Defendants summary judgment on McKesson's Interference with Business Relations claims, the Court need not reach Defendants' alternate argument for partial summary judgment on damages regarding the Interference claim.

*word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact,* which-

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(emphasis added). In order to state a claim under the Lanham Act, McKesson must establish that: 1) the defendant has made false or misleading statements of fact concerning his own product or another's; 2) the statement actually or tends to deceive a substantial portion of the intended audience; 3) the statement is material in that it will likely influence the deceived consumer's purchasing decisions; 4) the *advertisements were introduced into interstate commerce;* and 5) there is some causal link between the challenged statements and harm to the plaintiff. *American Council of Certified Podiatric Physicians and Surgeons v. American Board of Podiatric Surgery, Inc.,* 185 F.3d 606, 613 (6th Cir.1999)(emphasis added; citation omitted)(*American Council*). De-

fendants move for summary judgment on McKesson's Lanham Act claims on several bases, including McKesson's alleged inability to establish the fourth element of its cause of action; that statements were introduced into interstate commerce.

In response, McKesson's states its Lanham Act claim is based on David Bowman and a Caligor employee presenting a price comparison sheet to one of McKesson's customers in Michigan that, according to McKesson, contained false statements regarding McKesson's prices. (Pl.'s Resp. Br. at 28–29). McKesson then states that "interstate commerce is implicated because *Caligor's products* are shipped from Indianapolis to customers located in Michigan." (*Id.* at 29)(emphasis added).

As quoted above, McKesson must establish that "the advertisements were introduced into interstate commerce ...." *American Council,* 185 F.3d at 613. The fact that Caligor ships its products in interstate commerce does nothing to prove this element of McKesson's claim, which is based on Caligor making allegedly false statements in Michigan. Therefore, the Court is satisfied that Defendants are entitled to summary judgment on McKesson's Lanham Act claims.

## IV. *Breach of Duty of Loyalty:*

Defendants [4] argue they are entitled to summary judgment on McKesson's Breach of the Duty of Loyalty claim because there is no evidence that David and Ruth Bowman breached their duty of loyalty while working for McKesson, and, to the extent the claim is based upon Defendants' actions after leaving McKesson, the MUTSA displaces such a claim. In support of their first contention, that no evidence exists that the Bowmans breached their duty of

---

**4.** Defendants in this section refers only to David and Ruth Bowman, as the claim is

asserted only against them.

loyalty while employed by McKesson, Defendants cite *United Rentals (North America), Inc., v. Keizer*, 202 F.Supp.2d 727 (W.D.Mich.2002), where the court stated "Michigan courts have addressed few situations in which employees are held liable to their employers for breach of duty of loyalty." *Id.* at 744. *United Rentals*, however, involved a claim that the defendants had breached their duty of loyalty to the plaintiff while working for the plaintiff. *See id.* at 743. In the case at bar, McKesson's claim is based upon Defendants disclosing and using McKesson's confidential and/or trade secret information. Therefore, *United Rentals* does not support Defendants' Motion.

In response, McKesson argues that the MUTSA does not preempt its breach of duty of loyalty claim because the MUTSA only applies to trade secrets and, to the extent "that the information McKesson seeks [to protect] does not rise to the level of a trade secret, McKesson is still entitled to relief based upon the Bowmans' disclosure of its confidential, but not trade secret, information." (Pl.'s Resp. Br. at 29).

■■■ The MUTSA provides that "this act displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret[,]" and also that "[t]his act does not affect ... [o]ther civil remedies that are not based upon misappropriation of a trade secret." M.C.L. § 445.1908. The case cited by Defendants in support of their contention regarding MUTSA's preemption of McKesson's remedy also only deals with a breach of duty of loyalty claim based upon trade secrets. *CMI v. Intermet*, 251 Mich.App. 125, 131–32, 649 N.W.2d 808 (2002). In this Court's opinion, MUTSA only preempts other civil remedies that involve trade secrets. McKesson's claim in the case at bar, both according to its Complaint and its Re-

sponse to Defendants' Motion, are based not only on McKesson's trade secrets, but also other confidential information. Notwithstanding the fact that the MUTSA does not preempt McKesson's claim, Defendants are entitled to summary judgment because, as stated above, Plaintiff has not provided any evidence that the Bowmans actually did disclose or use any of McKesson's confidential information, *i.e.*, breached their duty of loyalty. Therefore, Defendants' Motion shall be granted on McKesson's Breach of the Duty of Loyalty claim.

## V. *Civil Conspiracy:*

■■■ A civil conspiracy claim consists of "(1) a concerted action; (2) by a combination of two or more persons; (3) to accomplish an unlawful purpose; (4) or a lawful purpose by unlawful means." *United Rentals*, 202 F.Supp.2d at 743 (citations omitted). Defendants contend they are entitled to summary judgment on McKesson's civil conspiracy claim because "[t]here is nothing unlawful in the Bowmans leaving their former employer and accepting employment with Caligor. Likewise, there is no evidence of any unlawful means used by the defendants, as the defendants did not misappropriate any trade secret belonging to McKesson." (Defs.' Br. at 23–24). In response, McKesson argues that "[t]he facts demonstrate that the defendants acted in concert to accomplish a lawful purpose (i.e. competition with McKesson) by unlawful means-the misappropriation of McKesson's trade secret customer information." (Pl.'s Resp. Br. at 30). Because McKesson's civil conspiracy claim is based upon its underlying Misappropriation of Trade Secrets claims, upon which this Court is granting summary judgment for Defendants, Defendants are also entitled to summary judgment on McKesson's civil conspiracy claim. Ac-

cordingly, Defendants' Motion shall be granted on McKesson's civil conspiracy claim.

For the reasons set forth above, Defendants' Motion for Summary Judgment shall be granted on Plaintiff's claims, but Defendants' request for attorneys fees shall be denied.

A Judgment consistent with this Opinion shall issue forthwith.