*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SHARON MCPHAIL,

       Plaintiff-Appellant,

v

DEPARTMENT OF EDUCATION, VENESSA
KEESLER, LEAH BREEN, BAY MILLS
COLLEGE, CHAD DEPETRO, MM1, INC.,
WILLIAM COLEMAN, and PATRICIA PEOPLES,

       Defendants-Appellees.

UNPUBLISHED
February 17, 2022

No. 354256
Wayne Circuit Court
LC No. 19-003980-CZ

Before: K. F. KELLY, P.J., and SAWYER and GADOLA, JJ.

PER CURIAM.

Plaintiff formerly worked at a Detroit charter school, but her employment ended after it was determined that she did not have the necessary certification to serve as a school administrator. Plaintiff filed this action related to her dismissal. Plaintiff's claims against defendant Michigan Department of Education (MDE) were removed to the Court of Claims, which dismissed the claims in June 2019. The remaining defendants moved for summary disposition under MCR 2.116(C)(7) and (8). The trial court granted their motions and denied plaintiff's motion for partial summary disposition. Plaintiff now appeals as of right, and we affirm.

Plaintiff worked at a Detroit charter school and alleges that she played a vital role in "turn[ing] the school around." In 2016, the MDE, as part of its oversight of the school, investigated whether plaintiff was required to be certified in her position as a school administrator. Administrative proceedings in 2016 and 2017 resulted in a finding that plaintiff was acting as a superintendent for the school and lacked the necessary administrator's certification. As a result, the school was subject to fines for employing an uncertified administrator. Plaintiff agreed to resign, but the MDE believed that she was continuing to work at the school as an independent contractor. After the school brought in a new person to serve as a conservator, plaintiff's employment was terminated. Plaintiff thereafter brought this action, primarily alleging that she was not subject to certification as a school administrator and that defendants tortiously interfered with her business relationship or expectancy and combined to oust her from her position for reasons unrelated to the certification requirement.

-1-

All of the defendants moved for summary disposition under MCR 2.116(C)(7) (claim barred by immunity granted by law) and MCR 2.116(C)(8) (failure to state a claim on which relief can be granted). Plaintiff filed a motion for partial summary disposition, alleging that defendants Bay Mills College ("Bay Mills") and Chad DePetro (collectively the "Bay Mills defendants") and defendants MM1, Inc., William Coleman, and Patricia Peoples (collectively the "MM1 defendants") failed to effectively deny various allegations from her complaint in their answers, resulting in those allegations being admitted. The trial court granted defendants' motions for summary disposition and denied plaintiff's motion for partial summary disposition. This appeal followed.

Plaintiff argues that the trial court erred by granting defendants' motions for summary disposition. This Court reviews a trial court's decision on a motion for summary disposition de novo. *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). The trial court granted defendants' motions under MCR 2.116(C)(7) and (8).

Summary disposition may be granted under MCR 2.116(C)(7) when a claim is barred by "immunity granted by law." *Odom v Wayne Co,* 482 Mich 459, 466; 760 NW2d 217 (2008). "In determining whether a plaintiff's claim is barred because of immunity granted by law, the reviewing court will accept the allegations stated in the plaintiff's complaint as true unless contradicted by documentary evidence." *Kincaid v Cardwell,* 300 Mich App 513, 522; 834 NW2d 122 (2013). If the moving party supports its motion with affidavits, deposition testimony, or admissible documentary evidence, the trial court must view that evidence and the pleadings in the light most favorable to the nonmoving party to determine whether the undisputed facts show that the moving party is entitled to immunity as a matter of law. *Id.* If there is an issue of fact regarding the right to immunity, the motion must be denied and the issue submitted to the trier of fact. *Id.* at 523.

A motion under MCR 2.116(C)(8) tests the legal sufficiency of the plaintiff's complaint by the pleadings alone. *Patterson v Kleiman,* 447 Mich 429, 432; 526 NW2d 879 (1994). All well-pleaded factual allegations are accepted as true, as well as any reasonable inferences or conclusions that can be drawn from the allegations. *Peters v Dep't of Corrections*, 215 Mich App 485, 486; 546 NW2d 668 (1996). Summary disposition may be granted only if the claims are so clearly unenforceable as a matter of law that no factual development could justify recovery. *Patterson*, 447 Mich at 432.

Plaintiff's complaint alleged a claim for tortious interference with a business relationship or expectancy against all defendants for their role in plaintiff's removal from her position at Detroit Community Schools (DCS). Plaintiff also alleged claims for civil conspiracy and concert of action against all defendants, claiming that they conspired and acted in concert to oust her from her position. At the heart of this case is plaintiff's contention that her position at DCS did not require certification because she was not involved in administering the school's instructional programs, and that defendants used her lack of certification as a ruse to oust her from her position at DCS. The trial court noted that plaintiff never produced any evidence related to her job title. In her complaint, she offered a description of her duties, but only generally described her position as an administrative leader of the school. Plaintiff's affidavit mirrored what was stated in her complaint. There was no dispute, however, that plaintiff was not involved in administering the school's instructional programs.

MCL 380.1246 provides:

> (1) A school district, public school academy, or intermediate school district shall not continue to employ a person as a superintendent, principal, assistant principal, or other person whose primary responsibility is administering instructional programs or as a chief business official unless the person meets 1 or more of the following requirements, as applicable:

> (a) For a superintendent, principal, assistant principal, or other person whose primary responsibility is administering instructional programs, or a chief business official, who was employed as a school administrator in this state on or before the effective date of the amendatory act that added this subdivision, has completed the continuing education requirements prescribed by rule under subsection (2).

> (b) Subject to subsection (3), for a superintendent, principal, assistant principal, or other person whose primary responsibility is administering instructional programs and who is initially employed as a school administrator in this state after the effective date of the amendatory act that added this subdivision, possesses a valid Michigan school administrator's certificate issued under section 1536.

> (2) The superintendent of public instruction shall promulgate rules establishing continuing education requirements as a condition for continued employment for persons described in subsection (1)(a). The rules shall prescribe a minimum amount of continuing education that shall be completed within 5 years after initial employment and shall be completed each subsequent 5-year period to meet the requirements of subsection (1)(a) for continued employment.

> (3) A school district, public school academy, or intermediate school district may employ as a superintendent, principal, assistant principal, or other person whose primary responsibility is administering instructional programs a person who is enrolled in a program leading to certification as a school administrator under section 1536 not later than 6 months after he or she begins the employment. A person employed as a school administrator pursuant to this subsection has 3 years to meet the certification requirements of section 1536, or the school district, public school academy, or intermediate school district shall not continue to employ the person as a school administrator described in this subsection.

MCL 388.1763, which is part of the State School Aid Act of 1979, MCL 388.1601 *et seq*., provides that a public-school academy is not permitted to hire uncertified individuals in certain positions and, if so, the academy is subject to a deduction in its state school allotment.

Plaintiff primarily argues that the trial court erroneously interpreted MCL 380.1246 to hold that she was required to be certified on the basis of her work for DCS. She contends that even if she were working as a superintendent, or could be considered the chief business official, the certification requirement does not apply unless she was primarily responsible for administering instructional programs. As explained below, however, the question whether plaintiff was required

-3-

to be certified was previously litigated in administrative proceedings before the MDE, which resulted in a finding that plaintiff was acting as a superintendent of DCS and was required to be certified under MCL 380.1246. Defendants argue that because plaintiff did not appeal that decision, she should be estopped from now claiming that she was not required to be certified under MCL 380.1246. Because defendants did not raise the estoppel issue below, it is unpreserved. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). Nonetheless, we hold that the MDE's decision supports affirmance of the trial court's dismissal of plaintiff's claims, even without giving preclusive effect to the MDE's decision.

As noted, plaintiff's primary claim against defendants was that they tortiously interfered with her business relationship or expectancy at DCS. In her complaint, plaintiff alleged that MM1, Coleman, and Peoples made false accusations that she was required to be certified because her primary responsibility involved administering instructional programs, thereby interfering with her employment. She also alleged that the MM1 defendants falsely accused her of performing poorly in order to manufacture a case against her, and that MM1 and Bay Mills hired a conservator as part of their plan to manufacture claims against her. She further claimed that defendants Leah Breen and Venessa Keesler, who were MDE employees, made adverse decisions related to her applications for certification, which also were intended to interfere with her business relationship with DCS.

The trial court dismissed the tortious-interference claim under MCR 2.116(C)(8), for failure to state a claim on which relief could be granted. The court observed that the alleged wrongful conduct on which the claim was based involved defendants' enforcement of the certification requirement in MCL 380.1246. The court ruled that

> [t]his latter element, however, cannot be established if the defendant's conduct was "motivated by legitimate business reasons." *Puetz v Spectrum Health*, 324 Mich App 51[; 919 NW2d 439] (2018). This is significant because the wrongful conduct on which this claim is based is simply the fact that Defendants enforced the certification requirements of MCL 380.1246. This conduct, Defendants argue, cannot be deemed either "improper" or "without justification" in light of McPhail's authority and responsibility at DCS. Thus, this Count fails to state a claim on which relief can be granted.

> As for the Civil Conspiracy and Concert of Action Counts, Defendants correctly cite *Urbain v Beierling*, 301 Mich App 114[; 835 NW2d 455] (2013), for the proposition that an essential element of both theories is an underlying tort. And while tortious interference could satisfy that requirement, McPhail is unable to state a claim on that theory for the reasons discussed above. Nor does McPhail's complaint allege any other conduct by Defendants which could be deemed improper, unjustified, or otherwise actionable on any tort theory. Thus, these Counts also fail to state a claim, rendering summary disposition appropriate.

> In response, McPhail does not dispute the legal authority on which Defendants' arguments are based. Rather, McPhail simply reiterates her position that she was not required to be certified, so Defendant's [sic] insistence on certification constitutes the wrongful conduct on which these claims are based. As

discussed above, however, Defendants were entitled to enforce the certification requirements of MCL 380.1246. Thus, the complaint does not state a claim on these theories, and summary disposition on this basis is appropriate.

A claim for tortious interference with a business relationship or expectancy requires proof of

> (1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy by the interferer, (3) an intentional and wrongful interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage to the party whose relationship or expectancy was disrupted. [*PT Today, Inc v Comm'r of the Office of Fin & Ins Servs,* 270 Mich App 110, 148; 715 NW2d 398 (2006).]

Interference alone will not support a claim under this theory, but

> [i]n order to establish tortious interference with a contract or business relationship, plaintiffs must establish that the interference was improper. *Patillo v Equitable Life Assurance Society of the United States,* 199 Mich App 450, 457; 502 NW2d 696 (1992). In other words, the intentional act that defendants committed must lack justification and purposely interfere with plaintiffs' contractual rights or plaintiffs' business relationship or expectancy. *Winiemko v Valenti,* 203 Mich App 411, 418 n 3; 513 NW2d 181 (1994) (citations omitted); *Feldman v Green,* 138 Mich App 360, 369; 360 NW2d 881 (1984). The "improper" interference can be shown either by proving (1) the intentional doing of an act wrongful per se, or (2) the intentional doing of a lawful act with malice and unjustified in law for the purpose of invading plaintiffs' contractual rights or business relationship. *Id*. [*Advocacy Org for Patients & Providers v Auto Club Ins Ass'n,* 257 Mich App 365, 383; 670 NW2d 569 (2003), aff'd 472 Mich 91 (2005).]

See also *Cedroni Assoc, Inc v Tomblinson, Harburn Assoc, Architects & Planners, Inc,* 492 Mich 40, 45; 821 NW2d 1 (2012). Plaintiff must prove that defendants acted intentionally and either improperly or without justification. *Dalley v Dykema Gossett, PLLC,* 287 Mich App 296, 323; 788 NW2d 679 (2010). As explained in *Dalley*:

> To establish that a defendant's conduct lacked justification and showed malice, "the plaintiff must demonstrate, with specificity, affirmative acts by the defendant that corroborate the improper motive of the interference." "Where the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference." [*Dalley*, 287 Mich App at 324 (citations omitted).]

Thus, if a defendant's actions were motivated by a legitimate business reason, those actions do not constitute improper motive or interference, and they cannot be wrongful per se. *Badiee v Brighton Area Sch,* 265 Mich App 343, 366; 695 NW2d 521 (2005); *Mich Podiatric Med Ass'n v Nat'l Foot Care Program, Inc,* 175 Mich App 723, 736; 438 NW2d 349 (1989); *Formall, Inc v Community Nat'l Bank of Pontiac,* 166 Mich App 772, 780; 421 NW2d 289 (1988). To establish a claim of tortious interference with a business relationship or expectancy, a plaintiff is required to

demonstrate, with specificity, the affirmative acts that corroborate the claimed improper motive of the defendant. *BPS Clinical Labs v Blue Cross & Blue Shield of Mich (On Remand),* 217 Mich App 687, 699; 552 NW2d 919 (1996).

The trial court reasoned that plaintiff's claim for tortious interference with a business relationship could not succeed if she were required to be certified to hold her position with DCS. Plaintiff argues on appeal that her position did not require certification. However, as applied to plaintiff's tortious-interference claim, the pertinent inquiry is whether defendants had a legitimate reason for believing that plaintiff's position required certification, which they were entitled to enforce.

In support of their motion for summary disposition, defendants Breen and Keesler submitted evidence that administrative proceedings were held in 2016 and 2017 where this issue was litigated, which resulted in an administrative finding by MDE that plaintiff was acting as DCS's superintendent and her position required that she be certified under MCL 380.1246. Breen and Keesler, as employees of MDE, were obligated to recognize that decision, and therefore, had a legitimate reason to seek enforcement of MDE's determination that plaintiff was required to be certified. The other defendants were associated with Bay Mills or DCS, so they too had legitimate business reasons for any statements or actions made by them related to enforcement of the certification requirement as decided by MDE. Therefore, plaintiff's tortious-interference claim was subject to dismissal because defendants showed that they acted pursuant to legitimate business reasons, and thus plaintiff is unable to prove that defendants' actions involved improper motives.

In addition, if plaintiff's tortious-interference claim could not succeed, plaintiff could not prevail on her claims for civil conspiracy and concert of action. "A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." See *Swain v Morse*, 332 Mich App 510, 530 n 13; 957 NW2d 396 (2020) (citation omitted); *Urbain*, 301 Mich App at 131-132. "For both civil conspiracy and concert of action, the plaintiff must establish some underlying tortious conduct." *Id.*; see also *Swain*, 332 Mich at 530 n 13. The basis for plaintiff's civil-conspiracy and concert-of-action claims is that defendants conspired and combined to tortiously interfere with plaintiff's business relationship with DCS. Thus, if the tortious-interference claim cannot succeed, then the civil-conspiracy and concert-of-action claims must also be dismissed. *Advocacy Org for Patients & Providers*, 257 Mich App at 384.

We recognize that the foregoing analysis is dependent upon evidence outside the pleadings, and that the trial court considered this issue only under MCR 2.116(C)(8), which limits review to the pleadings alone. Where a court considers evidence outside the pleadings, review is appropriate under MCR 2.116(C)(10), which permits summary disposition when "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." Although none of the parties moved for summary disposition under MCR 2.116(C)(10), where a party brings a motion for summary disposition under the wrong subrule, the motion may be addressed under the correct rule if none of the parties are misled. *Blair v Checker Cab Co*, 219 Mich App 667, 670-671; 558 NW2d 439 (1996); see also *Decker v Flood*, 248 Mich App 75, 80; 638 NW2d 163 (2001). Plaintiff had proper notice that the court would consider evidence beyond the pleadings because defendants Breen and Keesler also moved for summary disposition under MCR 2.116(C)(7) on the basis of governmental immunity and that subrule permits a party to

submit documentary evidence in support of the motion. Thus, plaintiff had notice that the submitted evidence regarding the administrative proceedings, and MDE's administrative decision that plaintiff was required to be certified, was properly before the trial court. Therefore, under the circumstances, review under MCR 2.116(C)(10) is appropriate.

The submitted evidence regarding MDE's administrative decision establishes that there is no genuine issue of material fact that defendants had a legitimate basis for believing that plaintiff was required to be certified, and thus acted pursuant to legitimate business reasons by seeking to enforce the necessity of certification. Therefore, plaintiff is unable to prove that defendants' actions involved improper motives. Accordingly, the trial court's dismissal of the tortious-interference claim may be affirmed under MCR 2.116(C)(10). And because the civil-conspiracy and concert-of-action claims cannot survive without an underlying tort, those claims were also properly dismissed.

Defendants Breen and Keesler additionally argue that they were entitled to immunity under MCL 691.1407 with respect to plaintiff's allegations that they were involved in revoking or denying plaintiff's certification permits. We agree.

MCL 691.1407 provides, in relevant part:

(2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:

(a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

(3) Subsection (2) does not alter the law of intentional torts as it existed before July 7, 1986.

In *Odom*, 482 Mich at 479-480, the Court summarized the process for determining whether a lower-level governmental employee is entitled to immunity, explaining:

(2) If the individual is a lower-ranking governmental employee or official, determine whether the plaintiff pleaded an intentional or a negligent tort.

-7-

(3) If the plaintiff pleaded a negligent tort, proceed under MCL 691.1407(2) and determine if the individual caused an injury or damage while acting in the course of employment or service or on behalf of his governmental employer and whether:

(a) the individual was acting or reasonably believed that he was acting within the scope of his authority,

(b) the governmental agency was engaged in the exercise or discharge of a governmental function, and

(c) the individual's conduct amounted to gross negligence that was the proximate cause of the injury or damage.

(4) If the plaintiff pleaded an intentional tort, determine whether the defendant established that he is entitled to individual governmental immunity under the *Ross*[1] test by showing the following:

(a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,

(b) the acts were undertaken in good faith, or were not undertaken with malice, and

(c) the acts were discretionary, as opposed to ministerial.

In this case, plaintiff's claims involve intentional torts. Accordingly, it is necessary to apply the test from *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567; 363 NW2d 641 (1984), to review the conduct at issue.

The evidence submitted by Breen and Keesler in support of their motion for summary disposition showed that the permits that plaintiff or DCS applied for on plaintiff's behalf were revoked or denied for failure to comply with prescribed administrative rules. In responding to Breen and Keesler's motion for summary disposition, plaintiff did not refute Breen and Keesler's evidence that the permit applications were procedurally deficient. Instead, she again primarily argued that she was not subject to the certification requirements for her position.

Breen and Keesler were acting within the scope of their duties as MDE employees when reviewing plaintiff's permit applications to work as a school administrator, and their actions were discretionary, not ministerial. Although plaintiff argues that Breen and Keesler were acting in bad faith or with malice, given that Breen and Keesler submitted evidence demonstrating that the permit applications were denied or revoked for failure to comply with various requirements of Mich Admin Code, R 380.116, and plaintiff's failure to refute that evidence, plaintiff failed to establish a question of fact whether Breen and Keesler acted in bad faith or with malice.

---

[1] *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567; 363 NW2d 641 (1984).

Accordingly, the trial court properly determined that Breen and Keesler were entitled to summary disposition on the basis of governmental immunity with respect to plaintiff's allegations related to the revocation or denial of the permit applications.

Plaintiff also argues that the trial court erred by dismissing her claim for false-light invasion of privacy against Bay Mills only. That claim was based on plaintiff's allegations that Bay Mills issued a press release that was false, and which, according to plaintiff, falsely portrayed her "as a thief, embezzler, trespasser, and wrongdoer in connection with DCS." The press release contained background information that DCS ended its relationship with plaintiff because she was not certified as required by state law, thereby subjecting DCS to fines, and further stated that a court had issued a temporary restraining order ("TRO") prohibiting plaintiff from exercising authority over DCS's operations, entering the school's property, or interfering with the conservator's operations. Plaintiff argued below that the press release falsely stated that she was required to be certified and falsely stated that a TRO had been issued.

As explained in *Puetz*, 324 Mich App at 69:

"In order to maintain an action for false-light invasion of privacy, a plaintiff must show that the defendant broadcast to the public in general, or to a large number of people, information that was unreasonable and highly objectionable by attributing to the plaintiff characteristics, conduct, or beliefs that were false and placed the plaintiff in a false position." *Duran v Detroit News, Inc*, 200 Mich App 622, 631-632; 504 NW2d 715 (1993). Further, "the defendant must have known of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed." *Detroit Free Press, Inc v Oakland Co Sheriff*, 164 Mich App 656, 666; 418 NW2d 124 (1987). See also *Early Detection Ctr, PC, v New York Life Ins Co*, 157 Mich App 618, 630; 403 NW2d 830 (1986).

Initially, given the MDE's previous administrative finding that plaintiff was required to be certified and that it is undisputed that DCS incurred fines by continuing plaintiff's employment as its superintendent without her being certified, the background statements related to plaintiff's lack of certification and the financial repercussions of that decision on DCS were not inaccurate. It is undisputed, however, that a TRO was never issued, and therefore, the portion of the press release discussing issuance of a TRO was false. We agree with the trial court, however, that this inaccuracy does not rise to the level of conduct supporting a claim for false-light invasion of privacy. A court's issuance of a TRO is not information that is inherently unreasonable or highly objectionable. Moreover, although the press release purported to identify activities that the TRO prevented plaintiff from doing (i.e., exercising authority over DCS operations, entering the school's property, and interfering with the conservator's operations), that information did not attribute any characteristics, conduct, or beliefs to plaintiff that would place her in a false light, particularly when the remainder of the information was not inaccurate. Further, there was no suggestion that plaintiff violated any of the purported conditions of the TRO. Therefore, we find no merit to plaintiff's contention that this information was capable of portraying her as "a thief, embezzler, trespasser, and wrongdoer in connection with DCS." Accordingly, there was no genuine issue of material fact regarding whether the false reporting of a TRO supported a claim

for false-light invasion of privacy, thereby supporting summary disposition under MCR 2.116(C)(10).

We acknowledge that the trial court improperly granted summary disposition of this claim under MCR 2.116(C)(8), because it was necessary to consider the press release, which was not part of the pleadings. Because the parties submitted documentary evidence outside the pleadings in support of their positions, the motion should have been reviewed under MCR 2.116(C)(10). Plaintiff cannot claim that she would be misled or prejudiced by considering the motion under Subrule (C)(10), given that she responded to Bay Mills's motion for summary disposition by submitting the press release and other documentary evidence outside the pleadings (e.g., evidence that the press release was publicized by local news outlets). Therefore, review under the proper subrule is appropriate. *Checker Cab Co*, 219 Mich App at 670-671; *Decker*, 248 Mich App at 80. Accordingly, on de novo review, we affirm the trial court's dismissal of plaintiff's false-light claim against Bay Mills, albeit under MCR 2.116(C)(10), rather than MCR 2.116(C)(8).

The trial court also held that Bay Mills and defendant Chad DePetro, its general counsel, were entitled to summary disposition under MCR 2.116(C)(7) on the basis of immunity under MCL 380.503(8). Plaintiff argues that Bay Mills and DePetro are not entitled to immunity under MCL 380.503(8) because the statute affords immunity only for "an act or omission in authorizing a public school academy" and her allegations against Bay Mills and DePetro did not involve an act "authorizing a public school academy." Although plaintiff's argument appears to have some merit, we find it unnecessary to decide this issue in light of our decision to affirm the dismissal of all claims against Bay Mills and DePetro under MCR 2.116(C)(10).

Plaintiff also argued below that defendants MM1, Coleman, and Peoples were liable for perpetrating a fraud upon the court. The trial court rejected this argument, explaining:

> The MM1 Defendants' "joinder" simply invokes the arguments presented by the other Defendants regarding the complaint's failure to state a claim for tortious interference, civil conspiracy, and concert of action. In response, McPhail argues that the claim is based on two forms of wrongful conduct, i.e., Defendants' "false" reports that McPhail require[ed] certification" [sic] and their participation in a "fraud on the court." The "fraud on the Court" arises out of the Conservator Berkompas's appointment of a new superintendent after she took over operation of DCS. According to McPhail, this person did not, in fact, carry out the duties of a superintendent. Rather, Berkompas carried out these duties, even though she is not certified pursuant to MCL 380.1246.
>
> McPhail's argument is without merit. First, for the reasons discussed above McPhail was required to be certified, so any "reporting" of this fact is not actionable on any of the theories identified in the complaint. Moreover, even if McPhail's allegations regarding Berkompas' role in operating the school are correct, such conduct would not excuse McPhail from the certification requirement, or otherwise render the enforcement of that requirement against her actionable, at least not on a tortious interference, civil conspiracy, or concert of action theory. Thus, McPhail's complaint does not state a claim against the MM1 Defendants, and summary disposition on that basis is appropriate.

Plaintiff again attempts to argue that she could prove her tortious-interference, civil-conspiracy, and concert-of-action claims against MM1, Coleman, and Peoples because her replacement at DCS was not certified to act as a superintendent. Even if plaintiff's replacement was not certified, this is not proof that defendants' actions involved improper motives where it is undisputed that, following administrative proceedings, MDE determined that plaintiff was required to be certified to occupy her position at DCS and defendants were merely acting to enforce that decision. Accordingly, the trial court did not err by granting summary disposition in favor of defendants MM1, Coleman, and Peoples.

Plaintiff also argues that the trial court erred by denying her motion for partial summary disposition with respect to the Bay Mills and MM1 defendants. She argues that these defendants failed to specifically deny certain allegations in her complaint, and thus those allegations should be deemed admitted. This argument lacks merit.

MCR 2.111(C), which governs the form of an answer to a complaint, provides:

> **(C) Form of Responsive Pleading.** As to each allegation on which the adverse party relies, a response pleading must
>
> (1) state an explicit admission or denial;
>
> (2) plead no contest; or
>
> (3) state that the pleader lacks knowledge or information sufficient to form a belief as to the truth of an allegation, which has the effect of a denial.

Plaintiff relies on MCR 2.111(D) and (E), which provide:

> **(D) Form of Denials.** Each denial must state the substance of the matters on which the pleader will rely to support the denial.
>
> **(E) Effect of Failure to Deny.**
>
> (1) Allegations in a pleading that requires a responsive pleading, other than allegations of the amount of damage or the nature of the relief demanded, are admitted if not denied in the responsive pleading.
>
> (2) Allegations in a pleading that does not require a responsive pleading are taken as denied.
>
> (3) A pleading of no contest, provided for in subrule (C)(2), permits the action to proceed without proof of the claim or part of the claim to which the pleading is directed. Pleading no contest has the effect of an admission only for purposes of the pending action.

Plaintiff argues that defendants' answers did not specifically deny all of her allegations, and as such, those allegations are deemed admitted under MCR 2.111(D) and (E). We disagree.

-11-

In their answer to plaintiff's complaint, the MM1 defendants admitted some of the allegations in plaintiff's complaint and denied other allegations with an explanation of the matters denied. For many of the allegations, however, their answer stated in paragraph 1, "Neither admit nor deny for lack of information sufficient to form a belief as to the truth of the allegations contained therein, *hereafter neither admit nor deny*" (emphasis added), and their answer thereafter simply provided for many of the allegations, "Neither admit nor deny." Similarly, in the Bay Mills defendants' answer to plaintiff's complaint, they expressly admitted some allegations, expressly denied other allegations, and for many other allegations responded, "Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of allegations contained in this paragraph of the Complaint, and therefore deny the same."

Plaintiff argues that because defendants did not make specific denials in response to many of her allegations, those allegations must be deemed admitted under MCR 2.111(D) and (E). Contrary to what plaintiff argues, however, the MM1 defendants and the Bay Mills defendants did not fail to deny specific allegations in the complaint. Rather, paragraph 1 of the MM1 defendants' answer explained that the remaining "[n]either admit nor deny" responses were to be understood as being based on a "lack of information sufficient to form a belief as to the truth of the allegations contained therein," which is a permissible response under MCR 2.111(C)(3) and, as provided in that rule, "has the effect of a denial." Similarly, Bay Mills and DePetro's like responses also had the effect of a denial.

To the extent that plaintiff questions the adequacy or specificity of defendants' denials, that is not a basis for deeming a matter admitted. Michigan is a notice-pleading state, so the pleadings need only put the other party on notice. See *Stanke v State Farm Mut Auto Ins Co*, 200 Mich App 307, 317; 503 NW2d 758 (1993). This applies to a defendant's answer to a complaint. Moreover, in 1 Longhofer, Michigan Court Rules Practice, Text (7th ed), p 353, § 2111.8, the author suggests that MCR 2.111(E) should not be read to include, as a sanction, that an improper denial constitutes an admission, because that involves a strained reading of the subrule. Instead, the more appropriate course of action is for the opposing side to move for a more definite statement, MCR 2.115(A), and then seek sanctions if any resulting order is not followed. Thus, granting substantive relief on the merits of a claim because of unclear or improper answers to a complaint is not an appropriate response in this situation. Accordingly, the trial court did not err by denying plaintiff's motion for partial summary disposition.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ David H. Sawyer
/s/ Michael F. Gadola

-12-